John F. COLL, Individually and on behalf
of all other similarly situated
persons, Plaintiffs,

v.

William F. HYLAND, Attorney General
of the State of New Jersey, et
al., Defendants.

Civ. A. No. 1525–73.

United States District Court,
D. New Jersey.

April 15, 1976.

Edward H. Tetelman and Joseph P. Murray, Newark, N.J., for plaintiffs.

Joseph T. Maloney, Deputy Atty. Gen., William F. Hyland, Atty. Gen., Trenton, N.J., for State defendants.

Joseph C. Glavin, Jr., Asst. County Counsel, Francis P. McQuade, Essex County Counsel, Newark, N.J., for County defendants.

Marilyn Morheuser, Deputy Public Advocate, Stanley Van Ness, N.J. Public Advocate, Trenton, N.J., amicus curiae.

Before WEIS, Circuit Judge, and BIUNNO and MEANOR, District Judges.

PER CURIAM:

The constitutionality of the New Jersey statute and procedural rules governing civil commitments of the mentally ill are attacked in this suit. After careful consideration, we conclude that the challenge fails and the procedural plan meets constitutional standards.

Plaintiff John F. Coll was involuntarily committed to the Essex County Hospital Center pursuant to a final order of the Juvenile and Domestic Relations Court of Essex County, New Jersey entered on June 8, 1970. He was still a patient at that institution on October 23, 1973 when he filed suit in this court. The complaint alleges a deprivation of federal constitutional rights, and, pursuant to 42 U.S.C. § 1983, requests injunctive and declaratory relief to a class which plaintiff seeks to represent.

Judge Biunno, to whom this case was originally assigned, ordered a hearing on Mr. Coll's competency. We need not detail the evidence, but it established the plaintiff's mental illness and that there is a strong probability he will require hospitalization from time to time in the future.[1] However, despite the absence of any change in his condition, Coll was discharged from the hospital soon thereafter.

Since the plaintiff's suit challenged the constitutionality of New Jersey Civil Commitment statutes and the state's procedural rules, a three-judge statutory court was constituted on April 25, 1975, pursuant to 28 U.S.C. §§ 2281, 2284. Counsel agreed to a stipulation of facts, submitted extensive briefs and presented helpful oral argument to the court.

It is not necessary to discuss the factual background of the plaintiff's 1970 commitment in the present case because we confine our inquiry to the constitutionality of the current rules of court, which are substantially different from those previously in effect. Therefore, while the procedures which resulted in Coll's commitment in 1970 were arguably deficient, those events are not pertinent to the contentions which are now advanced.

■ The defendants argue that the case is moot and that plaintiff is not a proper class representative since he is no longer confined. Even though Coll is not presently in an institution, the record establishes the likelihood that he will be recommitted perhaps a number of times in the future. Thus, the allegedly unconstitutional commitment procedures could affect him, and the defendants, having control of his discharge, could render the controversy moot by his release. As a result, the issue may be said to be one which is "capable of repetition yet evading review" and consequently not moot. *Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975); *Super Tire Engineering Co. v. McCorkle,* 416 U.S. 115, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974); *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Conover v. Montemuro,* 477 F.2d 1073 (3d Cir. 1973).

■ We conclude that Coll's past history of mental illness, together with the probability of future institutionalization, makes him a proper representative of the class.[2] His threat of injury is "real and immediate"

---

1. Judge Biunno appointed Reverend Horace Hunt as guardian *ad litem.*

2. We find that the requirements for certifying a class under Fed.R.Civ.P. 23(a) are met in this action. The class is sufficiently numerous so as to make joinder impractical as it is composed of all persons 18 years or older who may hereafter be committed involuntarily to a mental institution under the challenged procedure.

Second, the common question and typicality requirements are satisfied as the new Jersey provisions are challenged on their face and affect all class members in the same manner. Finally, plaintiff's common interest with the other members of the class and the vigor and diligence evidenced in the prosecution of this action indicate that he will adequately represent the class. Accordingly, the class will be certified under Fed.R.Civ.P. 23(b)(2).

—not conjectural or hypothetical [3]—and he is a member of the class which he seeks to represent. Since the focus of this suit is upon the current rules, we determine that the proper class be those persons 18 years or older who may hereafter be committed involuntarily to a mental institution through proceedings governed by the challenged statute and court rules.

■ Defendants also claim that abstention is proper. They contend that under the teachings of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny, this suit is not appropriate for injunctive relief because of the interference with state activities. They rely primarily on *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), and *Schmidt v. Lessard,* 421 U.S. 957, 95 S.Ct. 1943, 44 L.Ed.2d 445 (1975). However, these cases are readily distinguishable. In *Huffman,* the federal action was filed immediately after the state trial court had entered its judgment but during the period for appeal in the state system. In *Schmidt v. Lessard, supra,* a three-judge court declared the Wisconsin civil commitment procedures constitutionally defective, but the Supreme Court vacated that judgment and remanded for further consideration in light of *Huffman v. Pursue, Ltd., supra.* Examination of the lower court opinions reveals that the federal intervention occurred immediately after the patient had been committed but before a hearing had been set in the state court.

In both of the preceding cases, federal interference with the state judicial process was clear. Here, however, there is no commitment proceeding presently pending in the state court. As the Supreme Court observed in *Lake Carriers' Assn. v. MacMullan,* 406 U.S. 498, 509, 92 S.Ct. 1749, 1757, 32 L.Ed.2d 257, 268 (1972), "considerations of equity practice and comity in our federal system . . . have little force in the absence of a pending state proceeding." *Cf. Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). Thus, the comity issue is not present.

■ Nor is this a proper case for abstention under *Railroad Comm'n. v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Abstention, a judicially-created doctrine, has application only in exceptional circumstances. *Colorado River Water Conservation District v. United States,* —— U.S. ——, 96 S.Ct. 1236, 47 L.Ed.2d 483, 44 U.S.L.W. 4372 (1976). We must remain aware of the delays and expenses inherent in the abstention process and the fact that federal rights may be lost in the absence of expeditious federal adjudication. *Harris County Commissioners Court v. Moore,* 420 U.S. 77, 95 S.Ct. 870, 43 L.Ed.2d 32 (1975); *Zwickler v. Koota,* 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). We are examining a state program which does not have an uncertain meaning—there is little, if any, room for construction. As such, abstention has no application in the case. *Kusper v. Pontikes,* 414 U.S. 51, 55, 94 S.Ct. 303, 306, 38 L.Ed.2d 260, 265 (1973); *Mariniello v. Shell Oil Co.,* 511 F.2d 853, 860 (3d Cir. 1975).

The plaintiff attacks the New Jersey statutes and procedural rules governing involuntary commitment, specifically N.J.S.A. 30:4–37; 38; 41; 42, and N.J. Court Rules, R. 4:74–7(b), (c), (e).[4]

The statutes provide for commitment in three types of situations classified as A, B, and C. Class A does not require a temporary commitment. Class B includes those cases in which the patient's condition "in the judgment of the certifying physicians, is such that he should be placed under immediate restraint in an institution, and where an order of temporary commitment can be obtained prior to his admission . . . .." N.J.S.A. 30:4–37. Class C in-

---

**3.** On this and other factual bases *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561, 44 U.S.L.W. 4095 (1976), is distinguishable.

**4.** The statutes and rules may be found in the appendix attached hereto.

The plaintiff is supported by amicus curiae, The Division of Mental Health Advocacy, which is empowered by statute to "represent the interests of indigent mental hospital admittees in . . . litigation as will . . . best advance the interest of [patients] as a class." N.J.S.A. 52:27E–25.

cludes cases in which immediate restraint is needed and an order cannot be obtained before admission to an institution. N.J.S.A. 30:4–38.

The procedures to be followed in civil commitments are set out in R. 4:74–7, whose new version went into effect on September 8, 1975. Under this rule, an action for commitment is commenced when a complaining party files a written application accompanied and supported by the certificates of two physicians. They must state with particularity the facts justifying a conclusion that, if not committed, the patient would be a probable danger to himself or the community.[5]

The appropriate court then must set a date for a hearing—in a Class A case, not later than 20 days from the filing of the application; in a Class B case, not later than 20 days after the order of commitment; and in Class C, not more than 20 days after the patient's admission to an institution.[6] If the patient is unrepresented, the court must assign legal counsel.

Notice of the hearing must be served on all interested parties not less than 10 days in advance, and, in the case of the patient, notice must be served personally. Counsel has the right to inspect all records pertaining to the patient's mental condition.

No permanent commitment order may be entered except after a hearing at which the patient must be represented by counsel. The rules require that at least one licensed psychiatrist shall testify orally. The patient must appear at the hearing, but may be excused from the courtroom during all or any portion of the testimony if good cause is shown. Testimony by a psychiatrist that the patient's mental condition would be adversely affected if he heard candid and complete testimony is considered good cause.

To order a permanent commitment, the court must make a finding that the patient is a danger to himself or the community. Periodic review of the commitment thereafter is required.

The plaintiff asserts that the civil commitment proceedings are unconstitutional in a number of respects. We will discuss the contentions seriatim.

## I.

## NO PRELIMINARY HEARING IS REQUIRED

■ The plaintiff cites the failure to require a preliminary hearing as a constitutional deficiency. Nothing in the state's procedures prevents a court from holding a preliminary inquiry either before signing an order for commitment or within a few days after the patient's admission to an institution. But it is clear that the rule does not mandate a preliminary hearing.

In essence, the New Jersey plan provides for a formal hearing in Class B and C cases only after the order has been signed or the commitment has begun, and it must be held no later than 20 days thereafter. The only extension permitted is a ten-day adjournment which may be granted only in exceptional circumstances upon a showing of good cause. In view of these explicit restrictions, it is realistic to accept twenty days as the outside limit within which the formal hearing must be held; the provision requiring ten days notice sets the lower end of the time frame. Practically speaking, therefore, the hearing takes place between the eleventh and twentieth day after confinement in a Class C case. The period between initial confinement and the hearing may be somewhat shorter in a Class B case. However, this is not likely, for the underlying reason for the issuance of such

---

5. The standard for commitment states the view of the New Jersey Supreme Court that "dangerousness" must be shown to justify civil commitment. *State v. Krol,* 68 N.J. 236, 344 A.2d 289 (1975). *See also O'Connor v. Donaldson,* 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975).

6. New Jersey's temporary commitment procedure involves only Class B or C cases. No question with respect to Class A cases is before this court. Hence, no further reference will be made to Class A situations.

an order would mandate that confinement would begin very soon after the order is signed.

It bears repeating that, under the statute, an initial commitment without a hearing may be ordered only when two physicians certify that the patient, if allowed to remain at large, constitutes a danger to himself or the community. It must be conceded that there are situations in which the threat of harm to the patient or others is of such a nature that confinement must take place immediately. When the choice is between a loss of life or health and a loss of liberty for a brief period of time, the preferable alternative is apparent. Under circumstances such as these, each court considering the question has recognized that a hearing held within a reasonable time *after* confinement begins is an acceptable means of supplying requisite due process. *Lessard v. Schmidt,* 379 F.Supp. 1376 (E.D.Wis. 1974), *vacated and remanded for reconsideration,* 421 U.S. 957, 95 S.Ct. 1943, 44 L.Ed.2d 445 (1975); *In re Barnard,* 147 U.S. App.D.C. 302, 455 F.2d 1370 (1971); *Lynch v. Baxley,* 386 F.Supp. 378 (M.D.Ala.1974); *Bell v. Wayne County General Hospital,* 384 F.Supp. 1085 (E.D.Mich.1974); *Logan v. Arafeh,* 346 F.Supp. 1265 (D.Conn.1972), *aff'd sum. sub nom. Briggs v. Arafeh,* 411 U.S. 911, 93 S.Ct. 1556, 36 L.Ed.2d 304 (1973); *Fhagen v. Miller,* 29 N.Y.2d 348, 328 N.Y.S.2d 393, 278 N.E.2d 615, *cert. denied,* 409 U.S. 845, 93 S.Ct. 47, 34 L.Ed.2d 85 (1972).

The issue of whether a preliminary hearing is constitutionally mandated is more precisely phrased in terms of whether a hearing which may be held as long as twenty days after confinement meets constitutional requirements. The inquiry is not whether this court thinks a shorter period might be desirable or of greater benefit to the patient, but whether the time span is unconstitutional.

A number of courts have grappled with the problem in recent years. In *Lynch v. Baxley, supra,* the court fixed seven days as the appropriate outer limit within which to have a preliminary hearing. In *Bell v. Wayne County General Hospital, supra,* a five-day detention period on an emergency basis was not attacked, but an initial temporary commitment for a period of 60 or 100 days was held to be excessive. While no definite time was set by the court, it suggested that a five-day period would be appropriate. The *Lessard v. Schmidt, supra,* court believed that a hearing should be held within 48 hours.[7] *Fhagen v. Miller, supra,* approved a state procedure which allowed confinement for fifteen days without a hearing.[8]

The Supreme Court has passed upon the issue only once. In *Briggs v. Arafeh, supra,* the Court summarily affirmed a three-judge court ruling that a statute allowing confinement of up to 45 days without a hearing was constitutional. While the rulings on permissible delay allowable in the scheduling of hearings as set out in *Logan* and *Fhagen* have been said to lack persuasion,[9] we are not free to disregard the Supreme Court's affirmance of *Logan,* summary though it was. In *Hicks v. Miranda,* 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975), the Court emphasized that such affirmances are rulings on the merits of the controversy and binding upon the lower courts. *See also Colorado Springs Amusements, Ltd. v. Rizzo,* 524 F.2d 571 (3d Cir. 1975).

---

**7.** In *Bartley v. Kremens,* 402 F.Supp. 1039 (E.D. Pa.1975), a 72-hour period was mandated in the case of minors' commitments. However, certiorari has been granted in that case and all proceedings have been stayed. 423 U.S. 1028, 96 S.Ct. 558, 46 L.Ed.2d 402, 44 U.S.L.W. 3358 (U.S. Dec. 15, 1975).

**8.** In *Doremus v. Farrell,* 407 F.Supp. 509 (D.Neb.1975), the court required a preliminary

hearing within 5 days and a final hearing within 14 days. The statute merely required the Board to complete its investigation as soon as practicable and permitted confinement for 60 days for purposes of observation.

**9.** *See Developments in the Law—Civil Commitment of the Mentally Ill,* 87 Har.L.Rev. 1190 (1974).

In our view, the Supreme Court has foreclosed any successful challenge to the 20-day limit set by the New Jersey procedure. Even if it has not done so, we would not find the 20-day limit unconstitutionally unreasonable. It is obvious that the hospital authorities must be allowed some time to conduct adequate testing and observation of the patient so that a diagnosis can be made. Consideration also must be given to the necessities of court administration and the opportunity for counsel to prepare for an effective hearing. It bears emphasis that no temporary commitment can occur without the certifications of two physicians that the patient is a danger to himself or others.

Accordingly, we hold that since New Jersey requires that a final hearing be held within 20 days, there is no constitutional necessity for a preliminary hearing in Class B and C commitments.

## II.

### NOTICE SHOULD INCLUDE A STATEMENT OF THE FACTUAL GROUNDS FOR COMMITMENT

■ Relying on *Lessard* and *Lynch*, plaintiff contends that, if the notice is to be effective, it must include the factual basis upon which the commitment is sought, the names of examining physicians, any other individuals who may testify in support of the commitment, and a summary of the proposed testimony. It appears to us that the broad content of notice suggested by the plaintiff, while helpful and perhaps desirable, is beyond constitutional mandate.

A distinguishing feature of the procedures involved here and those in the cases upon which plaintiff relies is New Jersey's

absolute requirement of representation by counsel. As noted above, at the time the commitment order is signed, counsel is assigned to the plaintiff if he has not retained a lawyer. Consequently, the patient's lawyer—well in advance of hearing—may examine the applications for commitment and the physicians' certificates either by viewing the documents in the County Clerk's Office or by securing copies from the County Adjuster. This right of inspection and copying is expressly conferred by R. 4:74–7(d). Thus, most of the information which plaintiff suggests as necessary for inclusion in the notice is readily available to patient's counsel. While it might be preferable that the application and certifications be served upon the patient also,[10] we conclude that availability of this data to counsel saves the procedure from constitutional deficiency.

In Judge Biunno's view, the fact that the statute directs that the action be processed in a summary manner makes applicable by their terms New Jersey Court Rules R. 4:67–1(a) and 4:67–3. These would require service on the patient of the application, the physicians' certificates and the order required by R. 4:74–7(c)(1). No state court has addressed this question, but if it be so interpreted then the constitutional acceptability of the notice requirements becomes an *a fortiori* proposition. It is also worth noting that while R. 4:74–7(c)(3) leaves it to the court to specify in the order how and on whom notice is to be served, it does not expressly forbid service on the patient of the underlying papers.

The New Jersey rules extend of right a greater opportunity to acquire actual knowledge of the basis for the commitment than due process requires in the usual criminal or civil proceeding. We find that the notice requirements are constitutionally adequate.

---

10. In those instances in which the certifying physicians felt that disclosure of the contents of their reports would be harmful to the patient, an appropriate statement could be made. The court after consultation with patient's counsel and if satisfied that good cause exists, might then order that the reports not be served upon the patient but only upon the other persons specified in the rule.

## III.

## THE PATIENT MUST BE PRESENT AT ALL STEPS OF THE FINAL HEARING

Whatever doubt may have existed as to the requirement of attendance at the final hearing has been removed by the new R. 4:74-7(e). It requires the patient to appear at the hearing and permits him to be excused from the courtroom during all or part of the testimony only for good cause. Attendance during all of the hearing is the norm—exclusion from any part of the proceeding is the exception and will not be permitted without an order of the court.

The plaintiff relies upon the analogy of criminal proceedings in which the defendant must be present unless he engages in conduct preventing the continuation of the trial. *Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). The thrust of plaintiff's brief and much of the literature on the subject is that, since the loss of liberty involved in civil commitments is no less serious than incarceration for a criminal offense, the same procedural safeguards must apply. *See, e. g., The "Crime" of Mental Illness: Extension of "Criminal" Procedural Safeguards to Involuntary Civil Commitments,* 66 J.Crim.L.C. 255 (1975).

It is unhappily true that, because of man's relatively minute knowledge of mental illness and its cure, the interest of society and the patient often allow only the alternative of confinement. Differing bases underlie governmental power to punish criminals and to hospitalize the dangerous mentally-ill person.

■ In the criminal field, the state's police power is exercised because of the necessity to enforce the law, punish transgressors, and protect society to some extent from continuing criminal activity by incarcerating the offender. But the civil field presents other considerations. To the extent that a dangerous mentally-ill person is confined for the protection of other members of the community, police power is exercised. However, when the purpose is to prevent harm to the patient, the concept of *parens patriae* comes to the fore. This doctrine, which recognizes the historical duty of the sovereign to care for those who are mentally incompetent, still has validity.

The debate over whether purely police power or *parens patriae* predominates does not obscure the fact that both are involved and both must be considered.[11] While the state cannot force a non-dangerous mentally-ill person to enter a hospital, the sovereign is not relieved of its moral duty to protect those who will be harmed if left at large.

The disturbing question of when a person is dangerous to himself often leads to considerations of what is in his own best interests. Assuming that other, less restrictive alternatives to confinement are not available, is it better that a person be at liberty if it means that he will be unable to feed, clothe or shelter himself properly? Further, does a patient's counsel have a conflict of interest in determining whether he should contest the state's police power or ask for assistance under *parens patriae*?

■ The moral obligation of the state and society leads to doubt that a wooden application of criminal law safeguards is the way to fashion competency proceedings. While that approach offers certainty and a comforting sense of order to the legal mind, it also tends to brush aside considerations of concern for an unfortunate human being. Our system of justice is based on the adversary system, but that may not necessarily be the optimum procedure in a competency hearing[12] with its special problems and conflicting aims. A balance of traditional concepts and more informal methods may offer

11. See Livermore, Malmquist & Meehl, *On the Justifications for Civil Commitment,* 117 U.Pa. L.Rev. 75 (1968).

12. For an exchange of views, see Stanton, *Involuntary Civil Commitment Proceedings: A* *Trial Judge's View,* 98 N.J.L.J. 425 (1975), and Singer, *Civil Commitment Proceedings, A Response to a Trial Judge's View,* 98 N.J.L.J. 553 (1975).

greater promise. *Cf. McKeiver v. Pennsylvania*, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971).

The plaintiff's objection to the provisions of the rule which permit testimony in the patient's absence in restricted circumstances appear to be ill-founded. In a proceeding designed at least in part to benefit the patient, it would indeed be a paradox to require him to hear testimony which might adversely affect his mental condition.

We are convinced that the plaintiff's contention that he be required to be present during all of the testimony—even if it be a real detriment to his possible recovery—is less enlightened than the flexibility provided by the rule. The rule adequately safeguards due process by providing that his attorney must be present in the few situations where the patient—for his own benefit—should be excluded from the hearing.[13]

We find the rule's provision for attendance at the hearing is constitutionally satisfactory.

## IV.

### MISCELLANEOUS

The plaintiff raises a number of other points which we do not find necessary to discuss at length. The issue of representation by counsel is adequately covered in the revised rule. Amicus asserts that there is a problem of competency of counsel in this field of the law. Whether that be so or not, it does not render the rule facially unconstitutional. As with competency of counsel in any other area, whatever might occur in exceptional circumstances must be decided in the light of the particular facts involved. The issue is not one which can be addressed in a vacuum.

Similarly, the complaint that hearsay evidence should not be used at the hearing is not at issue here. We have no case before us and no record upon which to base any judgment.

After a thorough review of the new Jersey statutes and procedural rules governing civil commitments, we conclude that constitutional standards have been met. Accordingly, judgment will be entered in favor of the defendants.

## APPENDIX

### STATUTES

30:4–37. *Class "B"; detention; commitment*

The class designated "B" shall include all cases where the condition of the patient, in the judgment of the certifying physicians, is such that he should be placed under immediate restraint in an institution, and where an order of temporary commitment can be obtained prior to his admission into such institution. In all such cases a statement of such condition of the patient must appear in the certificates of the physicians certifying to the insanity of the patient. The plaintiff shall, before the patient is admitted to the institution, obtain an order of temporary commitment, instituting the inquiry, from any municipal court or court of record in the county in which such person resides or may be. The order of temporary commitment, complaint and certificates shall be filed with the chief executive officer of the institution before or at the time of the admission of the patient to such institution and shall be the warrant and authority for the admission and detention of the patient for a temporary period not exceeding twenty days from the date thereof. It shall be the duty of the chief executive officer forthwith after such application, certificates and order of temporary commitment shall have been received by him, to mail certified copies thereof under his hand and the seal of the institution to the county adjuster of the county from

---

**13.** In *Doremus v. Farrell, supra,* the state statute permitted a Board to dispense with the patient's presence if it is unnecessary or "would probably be injurious to him." To the extent that the court's opinion does not permit exclusion because of injury to the patient, we decline to follow it.

which the commitment of such patient is requested. It shall thereupon be the duty of the county adjuster to present forthwith such certified copies to the court of such county.

30:4–38. *Class "C"; detention; commitment*

The class designated "C" shall include all cases where the condition of the patient, in the judgment of the certifying physicians, is such that the patient should be placed under immediate restraint and confinement in an institution, and where it is impossible to obtain an order of temporary commitment from a municipal court or court of record, in the county in which the patient resides or may be. A statement of such condition of the patient must appear in the certificates of the physicians. The plaintiff shall, on or before the admission of the patient to the institution, present the complaint and certificates to the chief executive officer of the institution, and such papers shall be the warrant and justification for the temporary detention of the patient at such institution. The chief executive officer shall thereupon make or cause to be made a copy of the papers so filed and shall certify them under his hand and the seal of the institution and forthwith mail such certified copies to the county adjuster of the county from which the patient shall have been admitted. It shall be the duty of the county adjuster upon receipt of the papers from the chief executive officer, to present the same to the court of the county and obtain an order of temporary commitment, which order shall approve the admission of the patient to the institution, and shall be the warrant and authority for the detention of the patient for a temporary period not exceeding twenty days from the date of his admission and it shall be the duty of the county adjuster to forward the order to the chief executive officer of the institution.

30:4–41. *Notice of judicial hearing; patients' rights*

In all cases where the patient is confined in an institution before a judicial hearing, and if there is to be a judicial hearing, the county adjuster shall serve or cause to be served personally upon the patient a written notice of the time and place of any such hearing and shall give notice to the plaintiff and the patient's nearest relative. The medical director, or the chief of service if so designated, shall afford the patient every opportunity to appear personally or by attorney at the hearing, and assist him in communicating with his friends, relatives or attorney. If the medical director or the chief of service of a mental hospital shall certify that in his opinion it would be prejudicial to the health of the patient, or unsafe to produce the patient at the inquiry, then such patient shall not be required to be produced.

30:4–42. *Hearing continuance; examination of witnesses; compensation of county adjuster*

The court shall hear and determine the matter in a summary way without a jury, or it may, in its discretion, call a jury to determine the question of mental illness.

A continuance of the hearing, when indorsed on the complaint, or certified copy thereof, shall be sufficient warrant and authority for the detention of the patient for such period. The aggregate period of continuances shall not exceed 3 months from the date originally fixed for such hearing.

The county adjuster in all cases shall forthwith notify the chief executive officer of the institution in which the patient is confined, of a continuance. The court shall also have power to order the taking and transcribing of the testimony adduced at the hearing, the expense of which shall be paid by the board of chosen freeholders of the county in the same manner as other court expenses are paid. If the court refers the matter of the examination of witnesses to the county adjuster, the county adjuster is hereby authorized and empowered to administer oaths for this purpose. Additional

compensation for the examination of witnesses by the county adjuster may be fixed by the court, subject to the approval of the board of chosen freeholders, and paid to the county adjuster in the same manner as compensation is paid to other county employees.

RULE

4:74–7.  *Civil Commitment*

*(a) Definitions.*  The definitions contained in N.J.S.A. 30:4–23 apply to this rule. The classes "A," "B," and "C" referred to in this rule are those defined by N.J.S.A. 30:4–36 to 30:4–38 inclusive.  The term "patient" used in these rules means the person whose commitment is sought pursuant to said statutes.  The term "psychiatrist" used in these rules means a licensed physician of the State of New Jersey, who shall be either certified or eligible for certification by the American Board of Neurology and Psychiatry.

*(b) Commencement of Action.*  An action for commitment shall be commenced by the filing of a written application, signed by the person seeking the commitment, to which shall be attached the typewritten certificates of two licensed physicians of the State of New Jersey.  The certificates shall state with particularity the facts upon which the physician relies in concluding that the patient if not committed would be a probable danger to himself or the community.  The form of application shall be prescribed by the Department of Institutions and Agencies subject to the approval of the Administrative Director of the Courts.

*(c) Temporary Commitment.*  A temporary commitment may be ordered based on the application provided for in paragraph (b) of this rule.  The order of temporary commitment shall make the following provisions:

1.  A place and day certain shall be set for the commitment hearing, which shall be in Class "A" cases not more than 20 days from the filing of the application, in Class "B" cases not more than 20 days from the date of the temporary order of commitment, and in Class "C" cases not more than 20 days from the date of admission of the patient into the institution.  The date shall not be subject to adjournment except that in exceptional circumstances and for good cause shown in open court and on the record the hearing may be adjourned for a period of not more than 10 days.

2.  If the patient is unrepresented, the temporary commitment order shall assign counsel to represent him.  If the patient is a minor, a guardian ad litem shall be appointed who shall be an attorney.  If the court, for good cause shown, appoints a guardian ad litem who is not an attorney, counsel for the guardian ad litem shall also be appointed.  Assigned counsel and guardian ad litem fees shall be fixed by the court after hearing and paid pursuant to paragraph (h) of this rule.

3.  The persons to be notified of the time and place of hearing, the mode of service of the notice, and the time within which notice must be served shall be specified.  In no case, however, shall notice be served less than 10 days prior to the date of the hearing, nor shall any mode of service of the notice on the patient be permitted other than personal service.  In addition to the patient and his counsel or guardian ad litem, notice shall also be given to the applicant, the nearest relatives of the patient, the county adjuster, and where the patient is confined to an institution, the superintendent of the institution.  Notice may be further ordered to be served on any other person specified by the court.

*(d) Discovery.*  Any rule, regulation or policy of confidentiality notwithstanding, the patient's counsel or guardian ad litem shall have the right to inspect and copy all records relating to the patient's mental condition.  The court may direct an independent psychiatric examination of the patient. The cost of said examination and the psy-

chiatrist's fee for testifying, if any, shall be borne by the person or public body charged with the patient's legal settlement.

*(e) Hearing.* No permanent commitment order shall be entered except upon hearing conducted in accordance with provisions of these rules. The application for commitment shall be supported by the oral testimony of at least one licensed psychiatrist of the State of New Jersey who shall have conducted at least one examination of the patient subsequent to the date of the temporary order. The patient shall be required to appear at the hearing, but may be excused from the courtroom during all or any portion of the testimony upon application for good cause shown. Good cause shall include testimony by the psychiatrist that the mental condition of the patient would be adversely affected by the patient hearing his candid and complete testimony. The patient shall have the right to testify in his own behalf but need not. The hearing shall be held in camera unless good cause to the contrary is shown. The applicant for the commitment may appear either by counsel retained by him or by the county adjuster. In no case shall the patient appear pro se.

*(f) Final Judgment of Commitment, Review.* If the court finds from the evidence presented at the hearing that the institutionalization of the patient is required by reason of his being a danger to himself or the community if he is not so confined and treated, it shall enter a judgment of commitment to an appropriate institution. The judgment shall provide for review of the commitment no later than (1) six months from the date of judgment, and (2) on or before one year from the date of judgment, and (3) annually thereafter, if the patient is not sooner discharged. All reviews shall be conducted in the manner required by paragraph (e) of this rule.

*(g) Judgment of Release.* A judgment discharging the patient may contain in appropriate circumstances conditions for the release such as attendance at a non-residential mental health facility or other form of supervision. Any such conditions shall be stated in the order of discharge with particularity. The continuation of any such conditions shall be subject to periodic review as provided by paragraph (f) hereof.

*(h) Legal Settlement.* The patient's legal settlement providing for the payment of the expense of his care and treatment shall be considered either at the commitment hearing or at a hearing on notice which may be held by the county adjuster thereafter and reported to the court. In either case the settlement shall be on order of the court. The person or public body charged with the legal settlement shall also be charged with the fee of assigned counsel and guardian ad litem and necessary costs incurred by him in representing the patient. If the assigned counsel or guardian ad litem is employed by a legal services project, his fee shall be ordered payable thereto. If he is employed by the State or a county, no fee allowance shall be made.

*(i) Filing.* All documents referred to in this rule shall be filed in the County Clerk's office together with an affidavit of service of all notices herein required. The files of the County Clerk shall not, however, be open to inspection by any person other than assigned counsel, guardian ad litem and the county adjuster except on court order in exceptional circumstances and for good cause shown.

*(j) Commitments of Minors.* No minor shall be committed except temporarily to a mental institution for treatment and care of an alleged mental condition on the application of his parent or parents or other person in loco parentis except on court order after hearing pursuant to paragraph (e) hereof. A guardian ad litem who shall be a person other than the applicant for the commitment, shall be appointed by the court to represent the interests of the minor at such hearing.

Note: Source—paragraphs (a), (b), (c), (d), (e), (f), and (g) captions and text deleted and new text adopted July 17, 1975 to be effective September 8, 1975.

## SUPREME COURT OF NEW JERSEY

RICHARD J. HUGHES
Chief Justice

STATE HOUSE ANNEX
TRENTON, NEW JERSEY

November 12, 1974       # 4 - 74

MEMORANDUM TO:   All Assignment Judges, Trial Court Administrators and County Clerks

FROM:   Chief Justice Richard J. Hughes

RE:   Involuntary Civil Commitment Proceedings

A study recently conducted by the Administrative Office of the Courts indicates that there is a lack of uniformity among the counties in regard to the docketing procedures being followed in civil commitment cases. A great divergence of practice occurs in involuntary proceedings, where in many instances, papers are not filed until after the final judgment of commitment. (See N.J.S.A. 30:4–56). In addition, lack of adequate docketing procedures has permitted uncontrolled administrative adjournments so the court does not have a written record of the patient's confinement. When notice is filed in the County Clerk's Office, no docket number has been assigned for further control.

In order to standardize procedures throughout the State, all involuntary civil commitment cases shall be handled in the manner described below.

## 1. DOCKETING

It shall be the responsibility of the Assignment Judge, either personally or through his Trial Court Administrator, to generally supervise the docketing of all involuntary civil commitment proceedings.

Assignment Judges shall arrange with all hospital facilities in their respective vicinages, so that within 72 hours of accepting a person for treatment, they will have forwarded written notification of this acceptance to the following: the County Clerk; the County Adjuster; the patient; and the patient's nearest relative. The Department of Institutions and Agencies will be contacting all state-run facilities directing them to forward notification in the prescribed manner.

Upon receipt of the above notification, it shall be the obligation of the County Clerk to docket the matter in the County Court. All such proceedings shall be docketed according to county, and in the following manner:

| COUNTY | CODE | CASE NUMBER | | YEAR COMMITTED |
|---|---|---|---|---|
| Atlantic | ATCC | 1 | — | 74 |
| Bergen | BECC | 1 | — | 74 |
| Burlington | BUCC | 1 | — | 74 |
| Camden | CACC | 1 | — | 74 |
| Cape May | CMCC | 1 | — | 74 |
| Cumberland | CUCC | 1 | — | 74 |
| Essex | ESCC | 1 | — | 74 |
| Gloucester | GLCC | 1 | — | 74 |
| Hudson | HDCC | 1 | — | 74 |
| Hunterdon | HNCC | 1 | — | 74 |
| Mercer | MECC | 1 | — | 74 |
| Middlesex | MICC | 1 | — | 74 |
| Monmouth | MNCC | 1 | — | 74 |
| Morris | MRCC | 1 | — | 74 |
| Ocean | OCCC | 1 | — | 74 |
| Passaic | PACC | 1 | — | 74 |
| Salem | SACC | 1 | — | 74 |
| Somerset | SOCC | 1 | — | 74 |
| Sussex | SUCC | 1 | — | 74 |
| Union | UNCC | 1 | — | 74 |
| Warren | WACC | 1 | — | 74 |

Consequently, "ATCC 1–74" would refer to the first civil commitment case docketed in Atlantic County in the calendar year 1974.[1]

### 2. ASSIGNMENT OF CASES

Assignment Judges shall be given full discretion to assign civil commitment cases.

### 3. SCHEDULING OF CASES

It shall be the responsibility of the County Clerk to assure that civil commitment hearings on the final order are held within 20 days from the date of initial commitment.

### 4. WRITTEN NOTIFICATION OF HEARING

It shall be the responsibility of the County Clerk to forward written notification of the time and place of the final hearing to the following: the County Adjuster; any assigned or retained counsel for the patient; the patient's nearest relative; and the plaintiff. Written notification shall be served personally upon the patient in accordance with N.J.S.A. 30:4–41.

In all instances mentioned above, written notification shall be transmitted no later than 5 days prior to the date of the hearing.

### 5. ADJOURNMENT POLICY

It shall be the responsibility of the Assignment Judge to effectuate either a judgment of commitment or release of the patient as expeditiously as possible; therefore, in the absence of extraordinary circumstances there shall be no more than one adjournment, which shall only be granted for good cause shown, and the duration of which should not exceed 10 days. If more than one adjournment is granted, a copy of the Order Granting Adjournment, with reasons therefore, shall be forwarded to the Division of Civil Practice, Administrative Office of the Courts, attention Cynthia Jacob.

### 6. CHANGE IN PATIENT'S STATUS

Assignment Judges shall arrange with all hospital facilities in their respective vicinages to have the medical director or chief of service of said hospitals forward timely notification (which shall be construed as no less than 72 hours if a court hearing has been scheduled) of any substantive change in status to the following: the County Clerk; the County Adjuster; any assigned or retained counsel who may have represented the patient at the last review; the patient's nearest relative; and the plaintiff. Substantive change shall include, but not be limited to: death; discharge; transfer; unauthorized departure; conditional release and return therefrom.

### 7. PERIODIC REVIEW

a. It shall be the responsibility of the Assignment Judge to supervise the periodic review of all persons who are now, or may hereafter become, involuntarily committed in their vicinage. For such purposes, docket numbers shall be assigned in the manner described above, with the last two digits reflecting the calendar year of initial commitment.

For all cases initiated after the effective date of this order, the following schedule shall be adopted:

1. A review of the proceedings 6 months after the date of final commitment.
2. A review of the proceedings 12 months after the date of final commitment.
3. A review of the proceedings 18 months after the date of final commitment.
4. A review of the proceedings 30 months after the date of final commitment.
5. A review of the proceedings every two years thereafter.

b. In all cases in which the patient had already been committed prior to the effec-

---

1. Cases shall be docketed on a calendar year, rather than court year, basis. This conforms with the practice now prevalent in the county courts.

tive date of this order, the following schedule shall be adopted:

1. All patients committed 10 years or more shall have their cases docketed and reviewed by March 1, 1975 with a further review every 2 years from the date of the last review.

2. All patients committed 5–10 years shall have their cases docketed and reviewed by June 1, 1975, with a further review every 2 years from the date of the last review.

3. All patients committed 30 months to 5 years shall have their cases docketed and reviewed by September 1, 1975, with a further review every 2 years from the date of the last review.

4. All patients committed less than 30 months shall be reviewed in accordance with paragraph (a) of this section.[2]

It shall be the obligation of the County Clerk to assure that proper notification of the review shall be given to: the County Adjuster; the executive director or chief of service of the hospital in which the patient is confined; the patient; any assigned or retained counsel for the patient; the patient's nearest relative; and the plaintiff.

Unless requested by any of the parties mentioned in the preceding paragraph, it shall remain within the court's discretion whether to accomplish the review summarily or by means of a plenary hearing; however, if specifically requested, a hearing shall be scheduled.

### 8. PATIENT'S RIGHT TO APPEAR

It shall be the responsibility of the Assignment Judge to assure that in all instances in which a hearing has been scheduled, that the patient be given every opportunity to appear. If the medical director or chief of service of the mental hospital feels that in his expert opinion it would be prejudicial to the health of the patient, or unsafe

to produce the patient at the inquiry, then it shall be the obligation of the medical director or chief of service to certify in writing to the court his expert opinion concerning the patient's inability to appear, setting forth the facts supporting his conclusion. The hearing judge shall evaluate any certification submitted and determine whether the personal appearance of the patient is feasible. (See N.J.S.A. 30:4–41).

The policy and procedures set forth in this memorandum shall take effect immediately.

cc: County Counsels
    County Adjusters
    Department of Institutions and Agencies

---

2. Officials at the Department of Institutions and Agencies have assured us that they presently are preparing an internal review of each patient's status on a semi-annual basis. Ac-

cordingly, there will be no administrative burden placed upon the institutions themselves in complying with this section of the Directive.