L. R. C., ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED, PLAINTIFFS, v. ANN KLEIN, COMMISSIONER, N. J. DEPARTMENT OF INSTITUTIONS AND AGENCIES, AND HER AGENTS AND SUCCESSORS IN OFFICE, DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided January 10, 1978.

*Ms. Linda Rosenzweig,* Assistant Deputy Public Advocate, argued the cause for plaintiff (*Mr. Stanley C. VanNess,* Public Advocate of New Jersey, attorney).

*Mr. William F. Hyland,* Attorney General of New Jersey, for defendant (*Ms. Elaine W. Ballai,* appearing).

DOUGLAS, J. C. C. This action attacks, among other things, the validity of *N. J. S. A.* 30:4-46.1 as violative of constitional guarantees:

1. Of due process by authorizing deprivation of liberty without a hearing and in the absence of any judicial approval or oversight.

2. Requiring consideration of alternatives less restrictive than institutionalization.

3. By sanctioning a deprivation of liberty based on the recommendation as to mental illness of only one physician who need not be a psychiatrist.

Defendants moved for summary judgment, and plaintiffs filed a cross-motion for Summary Judgment. There is no factual dispute affecting the constitutional questions raised. It is stipulated that

1. L.R.C. was not given a court hearing before detention in Ancora Psychiatric Hospital.
2. No patient admitted to a psychiatric hospital pursuant to *N. J. S. A.* 30:4–46.1 is given a court hearing prior to admission.
3. A court did not review the contents of the admitting affidavit prior to admission to the hospital.
4. L.R.C. was admitted on the affidavit of one New Jersey licensed physician.
5. L.R.C. was or could have been detained for seven days plus Saturday, Sunday and a holiday, if any.
6. L.R.C. was admitted to Ancora on December 29, 1976 and released on January 6, 1977.[1]

The doctor's certificate accompanying the patient is also stipulated to, and under medical findings provides:

1. History of previous illness (including mental illness) and/or previous hospitalizations: Denies previous suicide attempts.
2. History of onset of present illness (including predisposing factors) : Monetary problems, domestic problems — separated from wife and child recently.
3. Mental status (describe in detail the patient's behavior, appearance and manner). State what the patient said: Alert, attentive, no acute distress at this time. From explanation by both patient and police officers patient did threaten suicide and has been having severe domestic and monetary problems.
4. Additional facts and circumstances (including facts communicated by others) upon which my judgment is based: Separated from wife recently, "depressed". States patient, "Can't take it anymore".

---

[1]Motion to dismiss for mootness was denied on the rationale of *In re J. W.*, 44 *N. J. Super.* 216 (App. Div. 1957).

5. If applicable, carefully delineate and describe tendencies for destructive, homicidal or suicidal behavior; depression, violence or excitement: Patient repeatedly threatened suicide to police officers. Now states he won't. In view of the multiple problems involved, I do not feel safe releasing this patient at this time.

6. Medication (type and dosage): Denies.

7. History of use of alcohol:

8. Describe the patient's physical findings; physical status, vital signs; blood pressure, laboratory data; please forward abstract copies of medical reports:

9. Specify the exact condition observed: Calm at this time. But according to police, pt. was quite agitated and threatened suicide multiple times.

The certificate is directed to the chief executive Officer of the admitting institution and in the printed portion provides that the doctor certifies:

On the 29 day of Dec., nineteen hundred 76, I made a personal examination of L.R.C. who resides at (street address inserted) in (municipality inserted), and the County of Camden and the State of New Jersey and found said person to be suffering from a mental or nervous illness or from a psychosis caused by drugs or alcohol which renders said patient incapable of executing a voluntary application for admission.

I further certify that the condition which I have observed and which is described herein is such as to require his immediate hospitalization as provided for in Title 30:4–46.1 (*N. J. S. A.*) for a period of not exceeding seven days, excluding Saturdays, Sundays and holidays, so that said patient may undergo a period of observation to determine what further treatment shall be necessary for his health and safety and welfare and that of others in the community. I am not the director, Chief Executive Officer or proprietor of said hospital nor am I a relative, either by blood or marriage, of the patient.

It is not disputed that the commitment was under the authority of *N. J. S. A.* 30:4–46.1.

This court concludes that the challenge to the statute fails and the statute passes the constitutional requirements for which it is called in question.

The statute, adopted in 1953, reads as follows:

A person who upon examination by a duly licensed physician of this State shall be found to be suffering from a mental or nervous

illness or from a psychosis caused by drugs or alcohol which renders him or her incapable of executing a voluntary application for admission to an institution maintained by the State or a county or a municipality treating such illness, may upon the certificate of such physician, the form whereof shall be approved by the Department of Institutions and Agencies, and in the discretion of the chief executive or other officer in charge of such institution, be admitted thereto for observation for a period not exceeding seven days, excluding Saturdays, Sundays and holidays, unless such person is thereafter detained under the authority of a formal commitment entered pursuant to the provisions of sections 30:4–23 to 30:4–48 of the Revised Statutes or other applicable statute. [*L.* 1953, *c.* 418, § 1]

This, then, is the statutory and factual background in which the court must consider the claimed constitutional infirmities of this statute.

■ In considering the matter, certain fundamental principles must be borne in mind. It is presumed that in adopting the statute under review the Legislature acted with existing constitutional law in mind, and a statute will not be declared inoperative unless it is plainly in contravention of a constitutional mandate or prohibition. Further, even though a statute may be open to a construction which would render it unconstitutional or permit its unconstitutional application, it is the duty of the court to so construe the statute as to render it constitutional if it is reasonably susceptible to such interpretation. *State v. Profaci,* 56 *N. J.* 346 (1970). The principle that acts of the Legislature are presumptively valid is especially applicable when the statute has been in force for long periods of years. *Mason v. Paterson,* 120 *N. J. Super.* 184 (Law Div. 1972) ; aff'd o.b. 62 *N. J.* 471 (1973).

The statute under consideration by its terms deals with a temporary commitment of specifically limited duration, predicated on the certificate of one physician without court order, together with the admitting discretion of the chief executive or other officer in charge of the institution. This procedure differs from the commitments contemplated by the court rules concerning involuntary commitments (*R.* 4:74–7) and the statutes to which those court rules are

referable (*N. J. S. A.* 30:4–36 to 38) where no outside limit on the commitment·is contained in the committing papers, where there is required the certification of two physicians and, except in the case of class "C" patients (*N. J. S. A.* 30:4–38), where the committing papers must be reviewed and approved by a judge. Class "C" patients permit commitments without court approval where it is certified that it is impossible to obtain the approval of a court, which approval must be obtained promptly thereafter.[2] The procedures under *N. J. S. A.* 30:4–36 to 38 or *R.* 4:74–7 have

---

[2] *N. J. S. A.* 30:4–36 designates class "A" as cases where commitment is not necessary before judicial hearing and order.

*N. J. S. A.* 30:4–37 designates class "B" as cases which are similar to class "C" cases except that an order of temporary commitment can be obtained prior to admission.

*N. J. S. A.* 30:4–38 reads as follows:

The class designated "C" shall include all cases where the condition of the patient, in the judgment of the certifying physicians, is such that the patient should be placed under immediate restraint and confinement in an institution and where it is impossible to obtain an order of temporary commitment from a municipal court or court of record, in the county in which the patient resides or may be. A statement of such condition of the patient must appear in the certificates of the physicians. The plaintiff shall, on or before the admission of the patient to the institution, present the complaint and certificates to the chief executive officer of the institution, and such papers shall be the warrant and justification for the temporary detention of the patient at such institution. The chief executive officer shall thereupon make or cause to be made a copy of the papers so filed and shall certify them under his hand and the seal of the institution and forthwith mail such certified copies to the county adjuster of the county from which the patient shall have been admitted. It shall be the duty of the county adjuster upon receipt of the papers from the chief executive officer, to present the same to the court of the county and obtain an order of temporary commitment, which order shall approve the admission of the patient to the institution, and shall be the warrant and authority for the detention of the patient for a temporary period not exceeding twenty days from the date of his admission and it shall be the duty of the county adjuster to forward the order to the chief executive officer of the institution. [As amended *L.* 1953, c, 29, § 15]

survived constitutional attack in the federal courts. *Coll v. Hyland,* 411 *F. Supp.* 905 (D. N. J. 1976). The three-judge court there held that a preliminary hearing in those civil commitment proceedings was not required in light of the court rule provision requiring a final court hearing within 11 to 20 days, and certifications of two physicians prior to temporary commitment.

What, if any, constitutionally material differences exist between the two procedures, *N. J. S. A.* 30:4–36 to 38 and *N. J. S. A.* 30:4–46.1. In this inquiry reference will be made to class "C" patients only (*N. J. S. A.* 30:4–38) since those patients are provided with the least protection before admission.

In neither of the statutes being compared is a preliminary court hearing mandated. The patient is confined initially on the basis, as to 30:4–38 patients, of the certification of two doctors (who need not be psychiatrists), without more; as to 30:4–46.1 patients, initial confinement is on the certification of one doctor (not necessarily a psychiatrist) and in the discretion of the chief executive or other officer in charge of the institution. Therefore, a 30:4–46.1 patient also has the benefit of the opinion of two physicians, one of whom may indeed — and probably most often is — a psychiatrist or, at least by virtue of his position, experienced in detecting mental or nervous illness in patients. In this connection it is argued by plaintiffs that the exercise of discretion by the chief executive officer is illusory and statistics are submitted indicating that few patients presented under *N. J. S. A.* 30:4–46.1 are not, in fact, admitted. Thus, with respect to confinements at Ancora pursuant to *N. J. S. A.* 30:4–46.1, there were in 1974, 1,790; in 1975, 1,942, and in 1976, 1,907, while the comparable figures for patients refused admission recommended under *N. J. S. A.* 30:4–46.1 are 11 in 1974, 6 in 1975 and 16 in 1976. But these statistics may be interpreted in various ways, among which is the possible interpretation that for the most part only those patients really suffering from a mental or nervous illness

were presented under *N. J. S. A.* 30:4–46.1. In any event, the statute should not be declared unconstitutional because of an error in the implementation of the statute resulting in an unconstitutional application. *State v. Profaci, supra.* Rather, the remedy lies in that case of enforcement of the requirement for the chief executive of the admitting institution to properly exercise the discretion mandated by the statute. It is observed also that under 30:4–38 no discretion is imposed on the admitting institution, and yet the same possibility of institutional misuse of the statute is present in the provision providing for the determination concerning the impossibility of obtaining a court order. *Coll v. Hyland, supra,* approves *N. J. S. A.* 30:4–38 where the court held: "Practically speaking, * * * the hearing takes place between the eleventh and twentieth day after confinement in a Class 'C' case." Under *N. J. S. A.* 30:4–46.1 the maximum detention would be 11 days (seven days plus a weekend and holiday).

Moreover, it has been held that emergency detention situations (*e. g., N. J. S. A.* 30:4–46.1) evoke different constitutional considerations from those presented by longer-term commitment proceedings (*e. g. N. J. S. A.* 30:4–38). *Cf. Lynch v. Baxley,* 386 *F. Supp.* 378 (D. Ala. 1974), where the court held: "It cannot be seriously doubted that the state may, on occasion, have a compelling interest in the emergency detention of those who threaten immediate and serious violence to themselves or others." The court there likened the commitment to one accused of a crime where probable cause hearings are required and thereafter continued:

> Emergency detention without a hearing on its appropriateness and necessity can be justified for only the length of time required to arrange a probable cause hearing before the probate judge or other judicial officer empowered by law to commit persons to Alabama mental institutions . . . In no event, may such detention in the absence of a probable cause hearing exceed seven (7) days from the date of the initial detention.

In *Suzuki v. Quisenberry*, 411 *F. Supp.* 1113 (District Court, Haw. 1976) the court held:

> In my opinion, a full hearing as to whether a person should be detained and treated for mental illness is not a necessary consequence of emergency detention. The patient may be released without further action, or may agree to be a voluntary patient for a longer period of time, or may be turned over to the police for processing in the criminal justice system. Whatever the disposition, the State's interest in emergency intervention is the same and is sufficient to justify the temporary deprivation of liberty without prior notice of hearing.

The court in *Suzuki* approved a statute providing for emergency admission for a period not to exceed 48 hours under circumstances providing for less safeguards than the statute under consideration here. The *Suzuki* statute permits one doctor to certify, without accompanying application or other formality, that it is necessary that an individual receive an immediate examination or immediate care and treatment at a psychiatric facility, and further permits any police officer to take into custody and transport to a facility any person apparently mentally ill and conducting himself in a manner which in a mentally well person would be disorderly, or any person apparently intoxicated and found under circumstances in which he would be subject to arrest or in which his safety or property or the safety and property of others is endangered because of his actions or condition. Acceptance of the person as a patient by the psychiatric facility terminates the responsibility of the police officer. The *Suzuki* statute further provides that emergency admittees must be examined as soon as possible at the facility by a psychiatrist other than the certifying doctor and discharged unless such examination certifies the necessity of continued hospital treatment. No judicial examination is involved.

Thus, the constitutional infirmities of the statute here under consideration, argued for by plaintiffs, that the patient is deprived of due process by deprivation of liberty without

hearing or without requiring consideration of alternative, less restrictive possibilities, or on the basis of only one physician are not, in fact, supported. At most, the question is for what period of time may there be a temporary detention, and on this question the cases vary, as a review of them shows:

In *Briggs v. Arafeh,* 411 *U. S.* 911, 93 *S. Ct.* 1556, 36 *L. Ed.* 2d 304 (1973), the court summarily affirmed a three-judge court ruling that a statute allowing confinement up to 45 days without a hearing was constitutional. *Fhagen v. Miller,* 29 *N. Y.* 2d 348, 328 *N. Y. S.* 2d 393, 278 *N. E.* 2d 615 (Ct. App. 1972), *cert.* den., 409 *U. S.* 845, 93 *S. Ct.* 47, 34 *L. Ed.* 2d 85 (1972) approved a procedure allowing a 15-day confinement without a hearing. In *Lessard v. Schmidt,* 379 *F. Supp.* 1376 (E. D. Wis., 1974), vacated and remanded for reconsideration for reasons not pertinent here, 421 *U. S.* 957, 95 *S. Ct.* 1943, 44 *L. Ed.* 2d 445 (1975), the court suggested a preliminary "probable cause" hearing within 48 hours of an emergency detention, followed by a full hearing from 10 to 14 days after detention. *Lynch v. Baxley, supra,* approved a seven-day emergency commitment without a probable cause hearing.

It is particularly noted that the only time the United States Supreme Court has spoken, it approved a 45-day commitment without a hearing, and denied certification where a 15-day confinement without a hearing was approved. *Baxley, supra,* approved a seven-day emergency commitment

Viewed in the light of the foregoing, the present statute and factual situation cannot be said to be *plainly* in contravention of a constitutional mandate or prohibition, as argued for plaintiffs. *State v. Profaci, supra.* Plaintiffs' motion for summary judgment as to the constitutional issues is denied; defendants' similar motion is granted and the complaint is dismissed as to those issues.

There remains unresolved an issue as to whether the commitment here was in violation of *N. J. S. A.* 30 :4–46.1, as

to which disputed factual questions are raised.  Counsel is directed to advise the court as to whether this issue will be pursued so that appropriate scheduling can be made.