Chief Judge Fuld.
We are called upon to consider the constitutionality of sections 72 and 78 of the Mental Hygiene Law which provide for involuntary admission of certain types of mental patients.[1]
The plaintiffs, former mental patients in New York State and New York City hospitals, asserting that they are in “ constant *351 apprehension ’ ’ of being committed under sections 72 and 78, seek a judgment declaring those provisions unconstitutional. In brief, it is their position that, in authorizing involuntary hospitalization without prior notice or judicial hearing, the challenged sections deprive them, as well as all others alleged to be mentally ill, of their liberty without due process of law.
The sections in question were part of an extensive change in the Mental Hygiene Law made upon the recommendation of a special committee to study procedures for the commitment of the mentally ill. (See Special Committee to Study Commitment Procedures of Association of the Bar of the City of N. Y., Mental Illness and Due Process — Report and Recommendations on Admission to Mental Hospitals under New York Law [1962].) Section 78 provides for the involuntary admission to an approved hospital, for no longer than 30 days, of any person who is “ alleged to be in need of immediate observation, care or treatment for mental illness” (subd. I).[2] Any interested party may arrange for his hospitalization; no doctor’s certificate is required. However, if the patient or someone on his behalf gives notice in writing of his desire to be released, and it is determined that he requires care and treatment in a hospital beyond the 30-day period, an application must be made, within 10 days after the giving of such notice, for his hospitalization under section 72. The same procedure must be followed, at some time before expiration of the 30-day period, even if no request for release is made, as long as the patient is still in need of further hospital care and does not agree to hospitalization asa“ voluntary ” or “ informal ” patient (Mental Hygiene Law, § 71).
Early in 1970, the State Commissioner of Mental Hygiene promulgated a regulation which shortened section 78’s retention period to 15 days and provided a number of other safeguards for involuntary patients (14 NYCRR 62.2; also Appendix 1, form 468a). For instance, section 62.2 of the regulations requires that a prospective section 78 patient, before being admitted to the hospital, must be “ forthwith examined by a *352 staff physician ” and prompt notice of his admission given the Mental Health Information Service.[3] In addition, he must be advised that he may demand his release at any time, receive a judicial hearing as to his need for hospitalization, with counsel if desired (14 NYCRR, Appendix 1, form 468a), and, beyond that, that he must be accorded the right to habeas corpus relief (see, also, § 426).
Admission pursuant to section 72 of a person “ alleged to be mentally ill and suitable for care and treatment” — and this, of course, includes an individual transferred from section 78 status — may, as indicated above (p. 350, n. 1), only be had on the certificate of two examining physicians accompanied by an application, made 10 days in advance of admission, from a relative, friend or specified official (subd. 1). Upon being brought to the hospital, the patient must be “ examined forthwith by a staff physician” before he is admitted (subd. 1). Within five days, written notice of such application, along with notice of his rights, must be given to the patient, to the Mental Health Information Service and to his “ nearest relative * * * other than the petitioner ” (subd. 2). If a hearing is requested by any of these parties, the court must schedule one within five days of receipt of the request (subd. 3) and, if none is requested within 60 days, the patient’s retention beyond that time must have court sanction (§ 73). In either case, retention is authorized for no more than six months without further judicial review and, thereafter, only pursuant to continued periodic review (§ 72, subd. 3; § 73). If dissatisfied with a court order for retention or transfer, a patient or someone acting on his behalf may obtain a “ rehearing and a review of the proceedings already had and of such order,” with a trial, by jury if desired, on the question of the patient’s mental illness (§ 74).
In July of 1969, about a year before the present proceeding was brought, Fhagen commenced a suit in the District Court *353 for the Southern District of New York—in which plaintiff Winters later moved to intervene — raising essentially the same constitutional objections to the Mental Hygiene Law as are here advanced. Judge Weineeld, who heard the matter, held that substantial constitutional issues were posed and ordered the convening of a three-judge court to entertain the action. (See Fhagen v. Miller, 306 F. Supp. 634.) That tribunal, in April, 1970, decided to retain jurisdiction but to abstain from passing upon the questions presented until our State courts had an opportunity to consider the challenged provisions of the Mental Hygiene Law (312 F. Supp. 323).
Two months later, the plaintiffs instituted the present action in which, as noted above, they seek a declaration that sections 72 and 78 are unconstitutional. They subsequently moved for summary judgment, and the defendants countered with a cross motion to dismiss the complaint. Among their other contentions, the plaintiffs urged that, in order to meet due process requirements, a person may be confined under section 78 only if the term, “in need of immediate observation, care or treatment for mental illness ”, were to be construed as “ dangerously mentally ill ”.[4] The court at Special Term rejected the plaintiffs’ arguments, decided that the challenged provisions were constitutional and dismissed the complaint. The Appellate Division, although it concurred in Special Term’s conclusion of constitutionality, modified the judgment to the extent of striking from it the paragraph dismissing the complaint and substituting in its place a provision declaring the sections in question valid. We agree with that disposition.
Due process does, ordinarily, demand reasonable notice and an opportunity to be heard in advance of confinement or restraint. However, as we declared in Matter of Coates (9 N Y 2d 242,. 249), “ where immediate action is necessary for the protection of society and for the welfare of the allegedly mentally ill person, [it] does not require notice or hearing as a condition precedent to valid temporary confinement.” (Emphasis supplied.) In other words, due process does not guarantee “ ‘ any particular form or method of * * * procedure ’ ”; a mental
*354 patient so confined, we went on to say in Coates, is not uncom stitutionally deprived of his liberty so long as he is afforded an opportunity within a reasonably short period “ to litigate fully the question of [his] mental illness and the propriety of the proceedings which led to [his] confinement ”. (Matter of Coates, 9 N Y 2d, at p. 249.)
Although Matter of Coates is primarily concerned with “continued” confinement, it points the conclusion here. One “ afflicted with mental disease ”, as defined in our statute (Mental Hygiene Law, § 2, subd. 8), need not be violent or dangerous to justify a short confinement prior to notice and an opportunity to be heard. The public is entitled to prompt protection against the acts of such a person which, though not dangerous, might, if committed by a sane person, constitute, a punishable offense or which, by reason of his urgent need for immediate care and treatment, might harm others, albeit in a nonviolent manner. The “protection of society”—which we declared in Coates authorizes “immediate action” in the case of one allegedly mentally ill (9 N Y 2d, at p. 249)—requires more than the mere prevention of serious crimes of violence; it reasonably, and necessarily, includes the preservation of public order and public health. As Justice Bloustein stated at Special Term, “ if the allegedly mentally ill person is engaging in conduct which, if committed by a sane person, would constitute disorderly conduct, criminal nuisance, public lewdness, or sexual abuse of a minor, the State’s legitimate interest in protecting society would warrant that person’s temporary confinement as surely as if the individual was engaging in conduct amounting to felonious assault or homicide ” (65 Misc 2d 163, 170).
Moreover, since due process is not a concept to be rigidly applied, it is not offended if notice and a hearing follow confinement of a mental patient in an urgent case, as long as he is given the opportunity, within a short time, to litigate the question of his mental illness. That opportunity is amply afforded by the statutes under attack. In the first place, a section 78 patient, under the new departmental regulations (14 NYCRR 62.2),- may not be admitted to a hospital until he has been examined by a staff physician. Upon admission, he must be *355 immediately notified of his rights, including his right to a judicial hearing as to the need for hospitalization. Further, his demand for release is to be treated as a request for habeas corpus relief, and the appropriate court and the Mental Health Information Service are to be immediately notified. He may not be retained as a section 78 patient for more than 15 days; if he is unwilling to remain on a voluntary basis, he must either be released or transferred to a section 72 status with all the protections afforded by that statute. And, moreover, the Mental Health Information Service is charged with the duty of reviewing his admission and retention and of advising him, as well as others interested in his welfare, of his right to have a judicial hearing, with counsel, and to seek independent medical opinion (§ 78, subd. 2; § 88). In view of this “protective shield of checks and balances ” (Matter of Buttonow, 23 1ST Y 2d 385, 390), we find unpersuasive the plaintiffs’ contention that the absence of a provision for either a preadmission, or an automatic postadmission, judicial hearing renders section 78 unconstitutional.[5]
Even less persuasive is the plaintiffs’ challenge to the constitutionality of section 72. As indicated above, prior to his transfer to a hospital pursuant to that statute, a section 78 patient has already had notice and an opportunity for a hearing as to his need of hospitalization for mental illness as well as a right to habeas corpus relief. Then, following his transfer, he is again accorded these same rights. Moreover, he may only be admitted to a hospital under section 72 if he is found by three physicians to be “ afflicted with mental disease to such an extent that for his own welfare or the welfare of others, or of the com *356 munity, he requires care and treatment ” (§ 2, subd. 8). And, finally, his retention as a section 72 patient beyond 60 days is subject to periodic court review and — simply upon request of the patient or of a friend or relative — a court hearing and review of an order of retention may be had, including a trial by jury, if demanded, on the question of his mental illness (§§ 73, 74). A mentally ill person, so committed and hospitalized, certainly may not be said to have been deprived of his liberty without due process of law.
We have examined the plaintiffs’ other arguments and find them without substance.
The order appealed from should be affirmed, without costs.
Judges Burke, Scileppi, Bergan, Breitel, Jasen and Gibson concur.
Order affirmed.

. Section. 78 authorizes the director of an approved hospital to accept temporarily any person assertedly in need of immediate care by reason of mental illness. Section 72 deals with a person who is alleged simply to be mentally ill; in such a case, the certificate of two physicians is required in support of an application made on the patient’s behalf by a third party (see, infra, p. 352).

. A “ mentally ill person ” is defined in section 2 (subd. 8) of the Mental Hygiene Law as “ any person afflicted with mental disease to such an extent that for his own welfare or the welfare of others, or of the community, he requires care and treatment”.

. The Mental Health Information Service is an agency established in each Judicial Department of the Supreme Court, its head and staff being “ appointed and * * * removable ” by the Presiding Justice of the Appellate Division for each such department. It is charged with the duties, among others, of advising the patient of his rights, studying his case and providing the court with “ all * * * relevant information ” concerning it (Mental Hygiene Law, § 88).

. Admission procedures for “ dangerously mentally ill ” persons are expressly dealt with in sections 76 and 85 of the Mental Hygiene Law.

. This conclusion, we note, accords with the findings and recommendations contained in the report made by the Special Committee to Study Commitment Procedures of the Association of the Bar of the City of New York (Mental .Illness and Due Process—Report and Recommendations on Admission to Mental Hospitals under New York Law [1962], pp. 7, 9, 19-28) which led to the changes in the Mental Hygiene Law (L. 1964, ch. 738). It was the committee’s position that decision as to the need for hospitalization for mental illness should, in the first instance, be a medical one and that a patient’s due process rights, particularly with the assistance of an agency such as the Mental Health Information Service, would be amply protected by immediate post-admission notice and opportunity for a hearing. (See, also, Broderick, Involuntary Hospitalization for Mental Illness, 20 Catholic U. L. Rev. 547, 620.)