Ralph MIGNONE, Plaintiff,

v.

Leon J. VINCENT, Superintendent, Green Haven Correctional Facility, Two Unknown Officers of Green Haven Correctional Facility, and Officer Reese, Matteawan State Hospital, Defendants.

No. 75 Civ. 2992 (MP).

United States District Court, S. D. New York.

April 13, 1976.

Ralph Mignone, pro se.

Louis J. Lefkowitz, Atty. Gen. of the State of New York, New York City by Joan P. Scannell, Deputy Asst. Atty. Gen., New York City, for defendants.

## OPINION

POLLACK, District Judge.

Plaintiff, a state prisoner, brings this action pursuant to 42 U.S.C. § 1983 to redress alleged deprivations of his constitutional rights. The defendants, the superintendent of the Green Haven Correctional Facility and officers of both that facility and the Matteawan State Hospital, have moved for summary judgment in their favor on each of the claims set forth in the complaint. For the reasons which appear hereafter, partial summary judgment is granted in favor of defendants dismissing several of the asserted claims; the motion for judgment on the remainder is denied on the ground that triable issues are involved therein.

Plaintiff was sentenced to consecutive terms of from thirty to sixty years for robbery and from five to seven years (later reduced to three and one-half) for escape. A petition for habeas corpus, raising contentions distinct from those in the instant suit, was denied by this Court on February 27, 1975.

Plaintiff's claims herein arise out of events surrounding his transfer from Green Haven Correctional Facility to the Matteawan State Hospital in the fall of

1973 and winter of 1974. Mignone claims that on the drive from Green Haven to the Fishkill Diagnostic and Examination Center at Matteawan he was beaten by the two correctional officers-defendants; that he was again beaten at Fishkill and was forced to take medication by needle and orally; that, once back at Green Haven, he was denied medical attention for the injuries caused by the beatings; and that he was improperly denied privileges available to other inmates at Green Haven. These claims are disputed by the defendants.

Plaintiff's final claim arises from the facts—not controverted by the defendants—that he was committed to Matteawan State Hospital on January 28, 1974 without a prior hearing, and was released back to Green Haven after a court hearing on May 24, 1974 determined that commitment was unwarranted.

The two categories of plaintiff's claims, the allegations of physical abuse and of legally improper commitment, are best analyzed separately.

## I.

The defendants have submitted a number of affidavits from the relevant personnel at Green Haven and Matteawan which traverse the plaintiff's claims regarding beatings, refusal of medical attention and denial of privileges. The affidavits also deny the underlying facts of some of the claims, and supply facts which provide legal justification for such conduct as to the remainder.

██ While a summary judgment motion may not constitute a trial by affidavit, see *Heyman v. Commerce & Industry Ins. Co.*, 524 F.2d 1317 (2d Cir. 1975), the law is clear that "[w]hen the movant comes forward with facts showing that his adversary's case is baseless, the opponent cannot rest on the allegations of the complaint but must adduce factual material which raises a substantial question of the veracity or completeness of the movant's showing or presents countervailing facts." *Beal v. Lindsay*, 468 F.2d 287, 291 (2d Cir. 1972); Fed.R.Civ.P. 56(e).

██ The plaintiff has made no response to the defendants' motion and the factual data submitted thereon, despite the special effort made by the defendants' counsel, at the Court's direction, to notify the plaintiff that he had the opportunity to respond. Thus, although the pleadings of a *pro se* complainant are entitled to a liberal construction, see *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Frankos v. LaVallee*, 535 F.2d 1346 (2d Cir. 1976), the absence of any response by the plaintiff at all to the factual showing adverse to the plaintiff's pleading, renders summary judgment appropriate on these claims. Cf. *Williams v. Halperin*, 360 F.Supp. 554, 556 (S.D.N.Y.1973) (liberality afforded *pro se* complaint "is not without limits").

## II.

The defendants' statement of uncontroverted fact submitted in accordance with local general rule 9(g) admits that

Plaintiff was committed to Matteawan without a hearing or jury trial on January 28, 1974. Plaintiff was subsequently given a Court hearing where formal commitment was denied by the Court on May 24, 1974.

Since the facts are undisputed, defendants are entitled to summary judgment only if, "as a matter of law," Mignone was not entitled to a hearing prior to the date one was provided for him. Fed.R. Civ.P. 56(c). The defendants rely solely on their alleged compliance with § 408(7) of the New York Correction Law (McKinney Supp.1975) to defeat Mignone's claim.

Section 408, which governs the commitment of mentally ill prisoners to Matteawan State Hospital, provides that at least five days notice of the Warden's application to the Court for an order of commitment must be given to the inmate and a close relative. § 408(2). Thereafter, the relative may demand a hearing, which must be held within five

days of the Court order directing it. § 408(4).

Mignone was committed without a hearing pursuant to § 408(7), which provides that

> During the pendency of such proceeding the judge may forthwith commit such allegedly mentally ill person to a state hospital for the mentally ill in the department of correction upon petition and the affidavit of two examining physicians that the warden or other officer in charge is not able to properly care for such person at the institution where he is confined, and that such person is in need of immediate treatment.

An application for an order committing Mignone was made to the New York Supreme Court, Dutchess County, on January 16, 1974, returnable January 28; notice of the application was served on Mignone's brother on January 16. A petition for a "forthwith commitment" pursuant to § 408(7) was also made on January 16, and it was granted on January 22.

■ The transfer of a prison inmate to a hospital for the mentally ill is a sufficiently serious deprivation of liberty to trigger the protections of the Due Process Clause. *See United States ex rel. Schuster v. Herold,* 410 F.2d 1071, 1080 (2d Cir.), *cert. denied,* 396 U.S. 847, 90 S.Ct. 81, 24 L.Ed.2d 96 (1969). In *Schuster,* the Second Circuit held that a prisoner subjected to transfer to a mental institution "is entitled to substantially the same procedures . . . as are granted to civilians when they are involuntarily committed to a mental hospital." 410 F.2d at 1084. Thus, in the absence of authorities directly in point, it is proper to test Mignone's § 1983 claim by reference to the precedents which have determined the constitutional parameters of involuntary civil commitment procedures.

■ While a prior hearing is normally a prerequisite to the state's interference with a person's liberty, it may be delayed until some time after the depri-

vation has taken place where there is a compelling state interest to warrant the postponement. *See Goldberg v. Kelly,* 397 U.S. 254, 263 n.10, 90 S.Ct. 1011, 1018, 25 L.Ed.2d 287, 296 (1970). The courts have held that such an interest is present where there is an immediate threat of harm to self, others or society posed by a person allegedly in need of institutionalization in a mental hospital. *See Fhagen v. Miller,* 29 N.Y.2d 348, 328 N.Y.S.2d 393, 278 N.E.2d 615, *cert. denied,* 409 U.S. 845, 93 S.Ct. 47, 34 L.Ed.2d 85 (1972); *Suzuki v. Quisenberry,* 411 F.Supp. 1113, 44 U.S.L.W. 2422 (D.Haw.1976); *Bell v. Wayne County General Hospital,* 384 F.Supp. 1085 (E.D. Mich.1974); *Lessard v. Schmidt,* 349 F.Supp. 1078, 1091 (E.D.Wis.1972), *vacated on other grounds,* 414 U.S. 473, 94 S.Ct. 713, 38 L.Ed.2d 661 (1974), 421 U.S. 957, 95 S.Ct. 1943, 44 L.Ed.2d 445 (1975); *Logan v. Arafeh,* 346 F.Supp. 1265 (D.Conn.1972), *aff'd,* 411 U.S. 911, 93 S.Ct. 1556, 36 L.Ed.2d 304 (1973). Consequently, Mignone's commitment without benefit of a prior hearing does not violate his Due Process rights and, therefore, does not state a claim under § 1983.

■ Nonetheless, the authorities which approve emergency commitments without prior hearing are uniform in requiring that a hearing be held as soon as possible after the commitment to determine if the person should be released or continued under hospitalization. While the courts have generally refrained from specifying precisely how long the hearing may be delayed, they agree that the Constitution requires that a hearing be scheduled quickly after the commitment. *See Fhagen, supra,* ("a short time"); *Bell, supra,* (five days "appears to be appropriate"); *Lessard, supra,* (no more than 48 hours); *Logan, supra,* ("a reasonable period of time").

■ In this case some 120 days passed before plaintiff was granted a post-commitment hearing. The extent of the delay here is of sufficient duration to require explanation and justification. The present record does not provide conclusive answers on the issue.

First, the record does not indicate when the plaintiff or his family demanded a hearing. Section 408 provides for a hearing only upon demand—a provision which has been upheld by the New York Court of Appeals in an analogous statute, *see Fhagen v. Miller, supra,* though it may yet be constitutionally suspect as applied here—so that it may well be Mignone himself who was responsible for the delay in the hearing.

Second, the defendants may be immune from liability for damages under § 1983. To the extent that the Supreme Court justice was at fault in failing to schedule a timely hearing, he is immune from suit. *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *Kendall v. True,* 391 F.Supp. 413, 417 (W.D.Ky.1975). Indeed, the justice is not named as a defendant here. To the extent the defendant correctional officials are responsible for the delay in the hearing, they may be protected from liability by a qualified privilege attaching to official conduct. *See O'Connor v. Donaldson,* 422 U.S. 563, 577, 95 S.Ct. 2486, 2494, 45 L.Ed.2d 396, 408 (1975) (immunity applies unless defendant "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights" of the plaintiff); *Mukmuk v. Comm'r,* 529 F.2d 272 (2d Cir. 1976).

Accordingly, summary judgment is granted for defendant as to paragraphs four, six, seven, eight and nine of the complaint and the claims set forth therein are dismissed. Summary judgment is denied as to the claim in paragraph five of the complaint and a hearing thereon will be promptly set upon advice to the Court that the parties are ready therefor. The Court shall expect to be apprised thereon not later than 15 days hereof.*

SO ORDERED.

* Since plaintiff's commitment claim appears to have some merit, it is appropriate for the Court to appoint *pro bono* counsel pursuant to 28 U.S.C. § 1915(d) to represent him in regard to that remaining portion of his complaint. *See Chesney v. Adams,* 377 F.Supp. 887

(D.Conn.1974), *aff'd,* 2 Cir., 508 F.2d 836 (1975); Federal Judicial Center, *Recommended Procedures for Handling Prisoner Civil Rights Cases in the Federal Courts* (Tent.Rep't 1976) 21–23.