Sharon SUZUKI, on behalf of herself and all other persons similarly situated, Plaintiffs,

v.

Rosita T. ALBA and Jane Doe, Plaintiffs-Intervenors,

v.

George YUEN, in his capacity as Director of Health, State of Hawaii, Walter Quisenberry, Individually, Francis Keala, Individually and in his capacity as Chief, Honolulu Police Department, and George Bolian, M.D., Director of Psychiatric Services, Queen's Medical Center, Defendants.

Civ. No. 73-3854.

United States District Court, D. Hawaii.

Sept. 26, 1977.

As Amended Nov. 29, 1977.

■■■■■■■

■■■■■■■■■■■■■■■

■■■■■■■■■■

■■■■■■■■■■■■■■■

■■■■■■■■

■■■■■■■■■■■■■■■

■■■■■■■■■■

■■■■■■■■■■■■■■■

■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■

Shelby Anne Floyd, Legal Aid Society of Hawaii, Honolulu, Hawaii, for plaintiffs and plaintiffs-intervenors.

Michael R. Marsh, Deputy Atty. Gen., Ronald Y. Amemiya, Atty. Gen., State of Hawaii, Honolulu, Hawaii, for defendants George Yuen and Walter Quisenberry.

Robert E. St. Sure, Deputy Corp. Counsel, Barry Chung, Corp. Counsel, Honolulu, Hawaii, for defendant Francis Keala.

John H. R. Plews, Anthony, Hoddick, Reinwald & O'Connor, Honolulu, Hawaii, for defendant George Bolian, M.D.

## DECISION ON MOTION FOR SUMMARY JUDGMENT

SAMUEL P. KING, Chief Judge.

In 1967, the Fourth State Legislature of the State of Hawaii passed Act 259, relating to "Mental Health, Mental Illness, Drug Addiction and Alcoholism." On March 18, 1976, in an action attacking the Act as unconstitutional, I held that the nonconsensual provisions of the Act were unconstitutional as violative of due process, except for a limited application of the short-term emergency hospitalization section. *Suzuki v. Quisenberry*, 411 F.Supp. 1113 (D.Haw. 1976) [hereinafter cited as *Suzuki I*].

In April, 1976, the Hawaii Legislature enacted Act 130 as amendments to Act 259.

This suit arises as a sequel to *Suzuki I*, as Plaintiffs attack the constitutionality of two nonconsensual provisions of the new Act. Upon careful consideration of the pleadings, memoranda and arguments made by counsel, I am of the opinion that H.R.S. § 334– (b)(1)(B) and § 334– (b)(4)(G) are unconstitutional as violative of the due process guaranteed by the Constitution of the United States.

### STATEMENT OF THE CASE

#### PLAINTIFFS

In *Suzuki I*, I expressly retained jurisdiction of the case pending enactment of legislation amending the invalidated portions of Act 259.[1] Thus, the Plaintiffs in the instant action are identical to those of *Suzuki I*: Sharon Suzuki was detained at Queen's Medical Center Psychiatric Facility pursuant to H.R.S. §§ 334–54(b), (c), 334–53 and 334–81. She sought a declaratory judgment deeming the statutes unconstitutional, along with an injunction. She also represented a class of persons certified pursuant to Federal Rule of Civil Procedure 23(b)(2) consisting of:

> All persons who are now or who may be in the future admitted or detained at a psychiatric facility (See H.R.S. § 334–1) as a patient (a) under H.R.S. §§ 334–51(a)(2), 334–53, 334–71, and 334–73(b) [hereinafter Subclass A] or (b) under H.R.S. §§ 334–51(a)(3), 334–54 or 334–73(a) [hereinafter Subclass B].

The complaints of Intervenors Rosita T. Alba and Jane Doe paralleled those of Plaintiff Suzuki.

#### DEFENDANTS

Defendants in this action are George Yuen, in his capacity as Director of Health, State of Hawaii; Walter Quisenberry, individually; Francis Keala, individually and in his capacity as Chief, Honolulu Police Department; and George Bolian, M.D., Director of Psychiatric Services, Queen's Medical Center.

---

1. See Order of Summary Judgment, March 18, 1976.

*COMPLAINT*

On September 14, 1976, Plaintiff Suzuki, on behalf of herself and the previously certified class, and Plaintiffs-Intervenors filed a Supplemental Complaint. The complaint seeks a declaratory judgment that §§ 334–(b)(1)(B) and 334– (b)(4)(G) of the new Act are unconstitutional as violative of the 5th and 14th amendments to the Constitution and contravene the Decision and Order of this Court in *Suzuki I.* Plaintiffs now move for Summary Judgment.

*THE STATUTES*

H.R.S. § 334– (b)(1) sets forth circumstances under which a person may be committed to a psychiatric facility for hospitalization in a nonconsensual nonemergency situation.[2]

H.R.S. § 334– (b)(4)(G) permits the temporary, nonconsensual, hospitalization of a person in a nonemergency situation where the individual refuses to participate in a psychiatric examination conducted to determine whether or not he should be committed.[3]

H.R.S. § 334– (b)(1)

*DANGER TO PROPERTY*

[1–3] Before a person may be committed pursuant to § 334– (b)(1), three prerequisites must be met.[4] Plaintiffs challenge the requirement that a person be "dangerous to himself or others or to property" in that an individual could be hospitalized if found to be dangerous to property but not dangerous to himself or to others.

Recent authorities require a specific finding of dangerousness to self or others before commitment may occur,[5] and thus impliedly exclude dangerousness to property as a basis for hospitalization.[6] I believe the requirements of substantive due process are met only when an individual is found to be dangerous to himself or to others, and thus hold that dangerousness to property is not a constitutional basis for commitment in an emergency or nonemergency situation.[7]

---

2. *See* note 4 *infra.*

3. *See* note 10 *infra.*

4. § 334– (b)(1) of Act 130 states:
   A person may be committed to a psychiatric facility for involuntary hospitalization if the court finds:
   (A) That the person is mentally ill or suffering from substance abuse, and
   (B) That he is dangerous to himself or others or to property, and
   (C) That he is in need of care and/or treatment, and there is no suitable alternative available through existing facilities and programs which would be less restrictive than hospitalization.

5. *Stamus v. Leonhardt,* 414 F.Supp. 439, 451 (S.D.Iowa 1976) ("pose a serious threat to themselves or others"); *Mignone v. Vincent,* 411 F.Supp. 1386, 1389 (S.D.N.Y.1976) ("immediate threat of harm to self, others or society"); *Doremus v. Farrell,* 407 F.Supp. 509, 515 (D.Neb.1975) ("poses a serious threat of substantial harm to himself or to others"); *Bell v. Wayne County General Hospital at Eloise,* 384 F.Supp. 1085, 1096 (E.D.Mich.1974) (three-judge court) ("causing harm to self or to others"), *relying on Humphrey v. Cady,* 405 U.S. 504, 509, 92 S.Ct. 1048, 31 L.Ed.2d 394 (1972) (dictum); *Lynch v. Baxley,* 386 F.Supp. 378, 391 (M.D.Ala.1974) (three-judge court) (likelihood to "inflict serious harm on himself or on others"); *Lessard v. Schmidt,* 349 F.Supp. 1078, 1093 (E.D.Wis.1972) (three-judge court), *vacated on other grounds,* 414 U.S. 473, 94 S.Ct. 713, 38 L.Ed.2d 661 (1974), *reinstated and enforced,* 379 F.Supp. 1376 (D.C.1974), vacated on other grounds, 421 U.S. 957, 95 S.Ct. 1943, 44 L.Ed.2d 445 (1975), *reinstated,* 413 F.Supp. 1318 (D.C.1976); ("immediate harm to himself or others"), *relying on Humphrey v. Cady, supra; Dixon v. Attorney General of Commonwealth of Pennsylvania,* 325 F.Supp. 966, 974 (M.D.Pa.1971) ("poses a present threat of serious physical harm to other persons or to himself").

6. It can be argued that danger to others includes the possibility of harm to the property of others. I reject such a broad interpretation. *See Lynch v. Baxley,* note 5 *supra,* where the definition "dangerousness to others" comprehends the positive infliction of injury—ordinarily physical injury but possibly emotional as well," thereby excluding property damage. Nor did the Legislature intend such a broad construction. See H.R.S. § 334–1 where "'(d)angerous to others' means likely to do substantial physical or emotional injury on another, as evidenced by a recent act, attempt or threat."

7. *Contra,* Order of Summary Judgment, March 18, 1976, p. 3. "Dangerous to property" could be construed to apply only in the context of an

The state's interest is not so compelling to justify commitment on any other basis, especially where the state's interest can be adequately protected through the use of criminal statutes prohibiting damage to property.[8]

## DEGREE OF DANGEROUSNESS

[4, 5] The statute is ambiguous as to the degree of dangerousness to self or others required in § 334–(b)(1)(B). The Supreme Court has stated that the degree of dangerousness constitutionally required before one may be involuntarily deprived of his liberty must be "great enough to justify such a massive curtailment of liberty." *Humphrey v. Cady*, 405 U.S. 504, 509, 92 S.Ct. 1048, 1052, 31 L.Ed.2d 394 (1972). This language has been interpreted as implying a balancing test where the state must prove the extreme likelihood that an individual will do immediate harm to himself or others if not confined. *Lessard v. Schmidt, supra*, 349 F.Supp. 1078, 1093 (E.D.Wis.1972)

(three-judge court). The proper standard is that which requires a finding of *imminent* and *substantial* danger as evidenced by a recent overt act, attempt or threat. *Id.* at 1093–94. Therefore, § 334–(b)(1)(B) is unconstitutional because it fails to require the finding of a recent act, attempt or threat of imminent and substantial danger before commitment may occur.[9]

## H.R.S. § 334– (b)(4)(G)

Under H.R.S. § 334– (b)(4)(G), one may be committed for not more than five days under nonemergency conditions, if he refuses to be examined by a physician for the purpose of determining whether or not he should be hospitalized. If the court finds sufficient evidence to believe that the allegations of the petition requesting commitment are true, the court may order the individual to a psychiatric facility for diagnostic examination and evaluation.[10]

---

emergency admission. In the statute's definitions, "dangerous to others" and "dangerous to self" are defined generally, while "dangerous to property" is defined only in the context of an emergency situation. H.R.S. § 334–1. "Dangerous to property" is not defined for purposes of nonemergency commitment. However, I believe dangerousness to property is an unconstitutional basis for commitment in an emergency or nonemergency situation.

**8.** *See, e. g.*, H.R.S. §§ 708–820 through 828.

**9.** The defendants argue that § 334– (b)(1)(B), when read in conjunction with § 334–1, does require a finding of imminent and substantial danger before commitment may occur. 334–1 provides in part:

"*Dangerous to others*" means likely to do substantial physical or emotional injury on another, as evidenced by a recent act, attempt, or threat.

"*Dangerous to self*" means likely to do substantial physical injury to one's self, as evidenced by a recent act, attempt, or threat to injury one's self physically or by neglect or refusal to take necessary care for one's own physically health and safety together with incompetence to determine whether treatment for mental illness or substance abuse is appropriate. . . .

Neither definition, however, completely meets the standard which I have found to

be constitutionally required. Nothing in the "dangerous to others" definition requires that the danger be imminent. Due to the use of the conjunction "or" in the "dangerous to self" standard, the statutory definition of this conduct could include behavior which is neither substantially dangerous nor imminent. These ambiguities make the statute constitutionally defective.

**10.** Section 334– (b)(4)(G) of Act 130 states: No individual may be found to require medical treatment unless at least one physician who has personally examined him testifies in person at the hearing. This testimony may be waived by the subject of the petition. If the subject of the petition has refused to be examined by a licensed physician, he may be examined by a court-appointed licensed physician. If he refuses and there is sufficient evidence to believe that the allegations of the petition are true, the court may make a temporary order committing him to a psychiatric facility for a period of not more than five days for the purpose of a diagnostic examination and evaluation. The subject's refusal shall be treated as a denial that he is mentally ill or suffering from substance abuse. Nothing herein, however, shall limit the individual's privilege against self-incrimination.

## CASE OR CONTROVERSY

■ Defendants assert that this court lacks jurisdiction to determine the constitutionality of the statute. They argue that no case or controversy exists because Sharon Suzuki, Rosita F. Alba and Jane Doe have never been or are not in immediate danger of being hospitalized pursuant to § 334– (b)(4)(G), notwithstanding the fact that members of the class have been directly affected by the statute. Relying on *Bailey v. Patterson*, 369 U.S. 31, 32–33, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962), defendants further argue that Plaintiff Suzuki lacks standing on the grounds that she cannot represent an injured class if she has not been injured or threatened with injury herself.

*Bailey v. Patterson, supra*, is distinguishable from the instant case, for Plaintiff and Plaintiffs-Intervenors are attacking an amended statute to predecessor Act 259. All Plaintiffs were directly injured by statutes of the predecessor Act in *Suzuki I*. This court retained continuing jurisdiction over the case pending amendatory legislation since most of the sections of Act 259 were declared unconstitutional. The continuing jurisdiction of this court cannot be ousted merely because named Plaintiffs have not been hospitalized or threatened with hospitalization under the amendatory statute. This court has the power to determine whether Act 130 complies with its Order and Decision in *Suzuki I*. Because members of the class have been confined pursuant to § 334– (b)(4)(G), this case clearly presents a substantial case or controversy warranting judicial determination. *Golden v. Zwickler*, 394 U.S. 103, 108, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969).

## STANDARD OF PROOF

■ Plaintiffs challenge § 334– (b)(4)(G) as violative of due process because it permits temporary commitment of an individual based on sufficient evidence rather than proof beyond a reasonable doubt. Defendants assert that the standard of proof should vary according to the length of commitment. They argue that sufficient evidence is a proper standard for temporary commitment, while indefinite confinement requires proof beyond a reasonable doubt.

This court has previously reviewed the issue of the proper standard of proof required for an order of commitment. In *Suzuki I*, I adopted the reasoning of *In Re Ballay*, 157 U.S.App.D.C. 59, 482 F.2d 648 (1973) and held that "the standard of proof in nonconsensual civil commitment proceedings must be beyond a reasonable doubt." 411 F.Supp. 1113, 1132 (1976). This standard applies in both nonemergency contexts and to indefinite temporary confinement. Because an individual's liberty is "an interest of transcending value," *Speiser v. Randall*, 357 U.S. 513, 525, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958), it must be carefully guarded against improper state encroachment. The higher standard of proof insures that a person will not be deprived of his liberty, even temporarily, unless the state makes a very strong showing that commitment is warranted. H.R.S. § 334– (b)(4)(G) violates due process because "sufficient evidence" requires a lesser quantum of proof than does proof beyond a reasonable doubt.

## 5TH AMENDMENT

■ Plaintiffs further attack the statute on the grounds that it violates one's 5th amendment privilege against self-incrimination. The statute provides that an individual may be temporarily hospitalized if he refuses to participate in a psychiatric examination conducted for the purpose of determining whether or not he should be committed.

In *Suzuki I*, I held that the privilege extends to civil commitment cases and that:

the state may not commit an individual on the basis (in whole or in part) of his statements to examining psychiatrists (or others) in the absence of a showing that the statements were made voluntarily after the individual was informed of and understood the purpose of the examina-

tion and that he was not obliged to speak. 411 F.Supp. at 1131.

Under § 334– (b)(4)(G), we have the situation where an individual may be committed, not because of statements he makes, but because of his refusal to participate in an examination even though he states that he understands the purpose of it.

Defendants contend the statute is constitutional because any testimonial evidence gathered during the commitment period could be excluded as inadmissible in subsequent proceedings unless the individual voluntarily waived his right to remain silent. They argue the statute specifically protects one's right against self-incrimination[11] and contend that an individual could still remain silent while hospitalized. These arguments avoid the issue that under the statute, an individual may be temporarily committed against his will precisely because he chooses to exercise his constitutional right to remain silent.[12]

The 5th and 14th amendments secure "the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty . . . for such silence." *Malloy v. Hogan*, 378 U.S. 1, 8, 84 S.Ct. 1489, 1494, 12 L.Ed.2d 653 (1963). The Supreme Court has held that individuals may not be coerced into waiving their right to remain silent by being penalized for asserting it. In *Garrity v. New Jersey*, the Court held that a statute requiring the discharge of

police officers who asserted their 5th amendment rights violated due process:

The choice given petitioners was either to forfeit their jobs or to incriminate themselves. The option to lose their means of livelihood or to pay the penalty of self-incrimination is the antithesis of free choice to speak out or to remain silent. 385 U.S. 493, 497, 87 S.Ct. 616, 618, 17 L.Ed.2d 562 (1967).

*See also, Lefkowitz v. Turley*, 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973) (statutes requiring public contracts to provide that if a contractor refuses to testify concerning his state contracts, his existing contracts may be cancelled.[13]

§ 334– (b)(4)(G) penalizes an individual who chooses to exercise his 5th amendment right by temporarily hospitalizing him contrary to his will. Because the statute has the effect of coercing an individual to waive a constitutional right, it is unconstitutional under the 14th amendment.

## SUMMARY

For the reasons set out above, H.R.S. § 334– (b)(1)(B) and H.R.S. § 334– (b)(4)(G) on their face and as applied are violative of the due process clause of the fourteenth amendment.

Declaratory relief will be granted in accordance with the foregoing opinion.

---

11. The statute states that "(n)othing herein, however, shall limit the individual's privilege against self-incrimination." Such a statement, of course, cannot render an unconstitutional statute constitutional, if it does, in fact, limit one's 5th amendment privilege.

12. It can be argued that "refuse(s) to be examined" means refusal to be examined by means other than the taking of verbal statements, *i. e.*, nontestimonial means such as observations, blood tests, X-rays, and electroencephalograms. Defendants argue that such nontestimonial means of examination does not violate the 5th amendment. *I cannot interpret the statute so narrowly.* The determination of mental illness is based to a great extent on a subject's verbal responses, and I believe the statute was intended to apply to individuals who refuse to participate in nontestimonial ex-

aminations as well as those who refuse to make verbal statements.

13. In *Baxter v. Palmigiano*, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976), the Court held that the 5th amendment does not forbid the drawing of adverse inferences against a state prison inmate for his failure to testify at prison disciplinary proceedings. His silence, along with other evidence, may be used to support an adverse decision by the disciplinary board. The case is distinguishable from the circumstances of § 334– (b)(4)(G). In *Baxter*, an inmate's silence is used for its evidentiary value in disciplinary proceedings. In the instant case, one's silence is not used for evidentiary purposes, but is used as a justification for hospitalization when there is otherwise insufficient evidence for commitment.