402 So.2d 383 (1981)
In re Herbert BYRNE.
In re Norma TURNER.
Nos. 57314, 57315.
Supreme Court of Florida.
June 25, 1981.
Rehearing Denied September 9, 1981.
Lester C. Wisotsky of the Legal Services of Greater Miami, Inc., Miami Beach, for appellants.
Jim Smith, Atty. Gen., and Brian E. Norton, Asst. Atty. Gen., Tallahassee, for appellee.
BOYD, Justice.
These consolidated cases are before the Court on appeal from judgments of the Circuit Court of the Eleventh Judicial Circuit, in Dade County, which upheld the constitutionality of section 410.104, Florida Statutes (1979). Under the jurisdictional provisions in effect at the time the notices of appeal were filed, jurisdiction of the appeals lay with this Court. Art. V, § 3(b)(1), Fla. Const. (1972).
On June 5, 1979, a social worker visited the appellants in their home and found them completely naked, surrounded by debris and excrement. Herbert Byrne, age 79, had called for help because his niece Norma Turner had fallen and he was unable to get her up. The social worker found that the plumbing was not working, parts of the ceiling were falling, and wires were dangling. A police officer took the appellants to a hospital.
*384 The next day the social worker filed petitions for emergency orders of custody pursuant to section 410.104, Florida Statutes (1979). The court, ex parte, immediately issued orders for emergency custody. On the following day, he appointed counsel for the appellants.
On June 8, 1979, the appointed attorneys filed motions to dismiss the petitions on the ground that the emergency procedures provided for by section 410.104 are unconstitutional. The judge held a hearing that same day. The judge denied the motions to dismiss, but found that there was insufficient evidence to establish a need for continued services. On June 13, the court issued an order denying the motion to dismiss and rendered a judgment "acquitting" the appellants from further involuntary custody. This appeal of the denial of the motion to dismiss followed.
Since the time the notices of appeal were filed, Herbert Byrne has died and Norma Turner has been adjudicated incompetent. It is arguable that the controversy has therefore been rendered moot. We retain jurisdiction, however, "since this is a matter of great public importance in the administration of the law and is of general interest to the public." Sadowski v. Shevin, 345 So.2d 330, 331-32 (Fla. 1977); see also Clark v. State ex rel. Rubin, 122 So.2d 807 (Fla. 3d DCA 1960).
Section 410.104, Florida Statutes (1979), authorizes the Department of Health and Rehabilitative Services to take elderly persons into custody and transport them to a medical or protective service facility in an emergency situation without their consent. The issue is whether this section comports with due process and is constitutional.
The statute provides as follows:
(1) Upon probable cause to believe that an individual suffering from the infirmities of aging is being abused, maltreated, or neglected, a representative of the department, accompanied by a law enforcement officer, may enter a premises, after obtaining a court order and announcing their authority and purpose. Forcible entry shall be attained only after a court order has been obtained, unless there is probable cause to believe that the delay incident to obtaining such an order would cause an individual suffering from the infirmities of aging to incur a substantial risk of life-threatening physical harm.
(2) When, from the personal observation of a representative of the department and a law enforcement officer, it appears probable that an individual suffering from the infirmities of aging is likely to incur a substantial risk of life-threatening physical harm or deterioration if not immediately removed from the premises, the department's representative may, when authorized by court order, take into custody and transport, or make arrangements for the transportation of, the individual to an appropriate medical or protective services facility.
(3) When action is taken under this section, a preliminary hearing shall be held within 48 hours, excluding Saturdays, Sundays, and legal holidays, to establish probable cause for grounds for protective placement.
(4) Upon a finding of probable cause, the court may order temporary placement for up to 4 days, pending the hearing for a need for continuing services.
(5) When emergency services are rendered, a report of the exact circumstances, including the time, place, date, factual basis for the need for such services, and the exact services rendered, shall be made and forwarded as provided for in s. 827.09.
§ 410.104, Fla. Stat. (1979).
The section under consideration is part of the Adult Protective Services Act, §§ 410.10-410.11, Fla. Stat. (1979). This statute was enacted to protect adults suffering from the "infirmities of aging" from "exploitation, neglect, abuse, and maltreatment" with "the least possible restriction on personal liberty and the exercise of constitutional rights, consistent with due proces... ." § 410.101, Fla. Stat. (1979).
The term "infirmities of aging" is defined to mean "organic brain damage, advanced *385 age, or other physical, mental, or emotional disfunctioning in connection therewith, to the extent that the person is substantially impaired in his ability adequately to provide for his own care or protection." § 410.102(1), Fla. Stat. (1979).
Section 410.103, Florida Statutes (1979), provides certain conditions governing the authority of the Department of Health and Rehabilitative Services to provide services:
(1) CONDITIONS FOR PROVIDING SERVICES.  The department shall provide protective services in response to complaints concerning, and requests for assistance from or on behalf of, individuals suffering from the infirmities of aging. The department shall provide such services under any of the following conditions:
(a) The person demonstrates a need for, and requests, such services.
(b) An interested person requests such services on behalf of a person in need of services.
(c) The department determines a person is in need of such services.
(d) A court orders such services.
(2) VOLUNTARY SERVICES.  An individual shall receive protective services voluntarily unless ordered by the court, requested by a guardian, or provided in accordance with s. 410.104.
Section 410.104(2) authorizes the department to relocate elderly persons without their consent who are "likely to incur a substantial risk of life-threatening physical harm or deterioration if not immediately removed from the premises...." This subsection also provides two procedural safeguards. First, both a representative of the department and a law enforcement officer must personally observe the emergency situation. Second, the relocation may be imposed only when authorized by court order. Even then such relocation cannot be imposed without consent for more than forty-eight hours. § 410.102(6), Fla. Stat. (1979).
Within the forty-eight hour period, a preliminary hearing must be held to determine whether there is probable cause for protective placement. § 410.104(3). At the hearing the allegations of the petition, that the person is suffering from the infirmities of aging and that there is a substantial risk of life-threatening physical harm or deterioration, must be proved. If the allegations are proved, the court may order temporary placement pending a hearing on the need for continuing protective services. § 410.104(4).
We hold that these procedures comport with the constitutional requirements of due process. The appellants' attorney argues that due process requires notice, an opportunity to be heard, and effective assistance of counsel, citing Specht v. Patterson, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967) and In re Beverly, 342 So.2d 481 (Fla. 1977). We find these requirements for civil commitment proceedings to be inapplicable to situations such as are reached by the statute under consideration. The purpose of this statute is not to incarcerate or confine mentally incompetent persons by commitment to state custody, but rather to free persons suffering from infirmities of aging from dangerous or oppressive conditions. The stated purpose of the statute  to protect the elderly  is genuine and not a euphemism for punishment. Compare In Re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) (fact that purpose of juvenile delinquency proceedings was rehabilitation and protection of child rather than criminal punishment did not justify denial of all due process rights).
Furthermore, the statute is limited to the situation of an emergency. The state, in such situations, must fulfill its obligation to preserve life whenever it can. See Satz v. Perlmutter, 362 So.2d 160 (Fla. 4th DCA 1978), aff'd, 379 So.2d 359 (Fla. 1980). This responsibility must be balanced against an individual's rights of self-determination and privacy. Under normal conditions, the state may not enter a person's home, take custody, and transport the person to another location without following the strict procedures of criminal prosecution or civil commitment. Due process, however, is not offended by a temporary loss of *386 liberty when a person's life may be threatened. See Fhagen v. Miller, 29 N.Y.2d 348, 328 N.Y.S.2d 393, 278 N.E.2d 615, cert. denied, 409 U.S. 845, 93 S.Ct. 47, 34 L.Ed.2d 85 (1972).
Removing an individual from an environment as unhealthy as the one in this case is essential to making a proper determination of whether the individual should be temporarily or permanently placed elsewhere. The wishes of the individual should be highly regarded and adequately represented, since the statute is designed for his benefit. The legislature recognized that some elderly people may in effect be held hostage by others or by their own environment. They may not know what is best for them or even know what they want after living under such conditions. Thus, relocating such persons and providing them with proper nourishment and medication is necessary to help them to regain a proper perspective on life so they can make a deliberate and unconstrained decision on whether to return.
Appellants' attorney argues that the court's authority to order continuing services is unconstitutionally vague and may lead to an indefinite period of involuntary commitment. We do not believe so. Reading the statute as a whole we find that continuing services should be ordered only until the person is no longer facing a substantial risk of life-threatening harm or deterioration. After that point the department can no longer render any services which are not voluntarily received.
Finally, appellants' attorney argues that the state lacks the authority under the parens patriae doctrine to impose services, treatment, and confinement upon competent elderly persons. We first note that under no circumstances can medical treatment be forced upon a person "in contravention of the stated or implied objection of such person." § 410.101, Fla. Stat. (1979). We further note that
the parens patriae notion [is] that the state is the ultimate guardian of those of its citizens who are incapable of caring for their own interest. (Citations omitted). Valid exercise of the parens patriae power presumes an incapability to manage one's affairs that approximates, if it is not identical with, legal incompetence to act.
In re Beverly, 342 So.2d at 485, quoting Lynch v. Baxley, 386 F. Supp. 378, 390-91 (M.D.Ala. 1974). People whose mental and physical capabilities are deteriorating because of old age may be approximating legal incompetency. Thus the state has the authority to exercise its parens patriae powers when it appears such persons are incapable of caring for themselves.
We affirm the trial court's order denying the motion to dismiss.
It is so ordered.
ADKINS, OVERTON and McDONALD, JJ., concur.
SUNDBERG, C.J., and ENGLAND and ALDERMAN, JJ., would dismiss the appeal as moot.