Vernon CULLIN, Plaintiff,

v.

WILLIAMS STEEL AND SUPPLY COMPANY, INC., Defendant.

No. 83–C–663.

United States District Court, E.D. Wisconsin.

April 8, 1985.

---

Vernon Cullin, pro se.

Paul E. Prentiss, Herz, Levin, Teper, Sumner & Croysdale, S.C., Milwaukee, Wis., for defendant.

## DECISION AND ORDER

WARREN, District Judge.

Presently before the Court in this matter is the motion of the defendant, Williams Steel and Supply Company, Inc., for summary judgment on the entire cause of action articulated by the plaintiff, Vernon Cullin, in his *pro se* complaint. The Court has reviewed the record compiled in this matter to date and concludes, for the reasons set forth below, that the motion must be granted, pursuant to Rule 56(b) of the Federal Rules of Civil Procedure.

## BACKGROUND

This action was initiated on May 20, 1983, when the plaintiff filed his *pro se* complaint, alleging that he was unlawfully terminated from his employment on the basis of race, age, and handicap, presum-

ably in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, the Age Discrimination in Employment Act, 29 U.S.C. §§ 623 *et seq.*, and the Wisconsin Fair Employment Act, Wis.Stat. §§ 111.31 *et seq.* Contending that his position as a crane operator did not require him to perform any heavy lifting or other, strenuous, physical activity, the plaintiff asserts in his statement of claim that a work reassignment necessitated that he undertake just such heavy, exertional tasks—something his treating physician had recommended against. The plaintiff justifies his charge of handicap discrimination as follows:

> ... During one of my routine visits to my family physician, Dr. H. Goldberg, Dr. Goldberg learned of my recent lifting requirement. As the result of obtaining this knowledge, Dr. Goldberg sent a letter to Williams Steel outlining my physical conditions and suggesting a certain limitation on my work assignments. I do not believe that these limitations would in any way effect [sic] the work that I was previously doing at Williams Steel & Supply Co., and that I could continue as I have in the past with my job duties. I consider my physical condition as outlined in Dr. Goldberg's letter to be a handicap under the term of the state discrimination laws, though I do not believe this handicap in any way affects by ability to perform my duties as a crane operator....

Plaintiff's *Complaint* at 3 (May 20, 1983).

As indicated above, the plaintiff further charges that he is the victim of both age and race discrimination and describes the second of these this way:

> ... Concerning possible racial discrimination, when Williams Steel moved to its current facilities its employees were predominantly black. Through the years the black employees have either left or have terminated [sic] by Williams Steel so that I was the sole black employee there for six years. I have witnessed black individuals entering Williams Steel & Supply Company personnel depart-

ment to request employment, and have personal knowledge that black individuals have been denied employment by Williams Steel. With my termination on Feb. 16, 1979, Williams Steel no longer has any black employees. . . .

Plaintiff's *Complaint* at 3–4 (May 20, 1983). Based on these allegations, the plaintiff apparently seeks reinstatement, damages in the form of back pay, and the reasonable costs of prosecuting his action.

Accompanying the plaintiff's *pro se* complaint was his petition for leave to proceed *in forma pauperis,* pursuant to 28 U.S.C. § 1915(a). By his *Order* of May 25, 1983, Judge Myron L. Gordon reviewed the plaintiff's affidavit of financial status; concluded that he was, in fact, able to pay those fees and costs attendant on initiating this lawsuit; and, accordingly, denied the request for leave to proceed *in forma pauperis.* Two days later, on May 27, 1983, the case was formally opened upon the plaintiff's payment of the requisite filing fees.

By its *Answer* of June 24, 1983, the defendant denied all material allegations set forth in the plaintiff's complaint and raised three affirmative defenses—namely, that the Court lacks subject matter jurisdiction over the state cause of action for handicap discrimination; that the complaint as a whole fails to state a claim upon which relief can be granted; and, significantly, that "[t]he identical claims contained in the Complaint were filed with and investigated by both the Wisconsin Equal Rights Division and the Equal Employment Opportunity Commission, and both agencies found that plaintiff's complaints were without merit." Defendant's *Answer* at 3 (June 24, 1983).

The Court conducted the first of two status conferences in this matter on October 20, 1983, at which the plaintiff appeared *pro se.* At the conclusion of that hearing, the Court imposed upon the plaintiff the obligation to report, within thirty days, on his intention to retain counsel, to petition for a court-appointed attorney, or to advise that he would continue to represent himself.

Some six weeks later, on December 5, 1983, the Court conducted a second status conference at which the plaintiff did not appear. By its summary letter of the same day, the Court advised this party of his continuing obligation to participate in all proceedings and notified him that his failure to do so in the future would prompt the Court's entertainment of a motion to dismiss for lack of prosecution. Based on defense counsel's statement of position, the Court also established a schedule for the filing and briefing of a motion for summary judgment—a schedule likewise incorporated in the summary letter of December 5, 1983, to both parties.

Consistent with the Court's instructions, the defendant filed the present Rule 56(b) petition on January 6, 1984. Significantly, pursuant to *Lewis v. Faulkner,* 689 F.2d 100, 102 (7th Cir.1982), defense counsel incorporated in his client's motion papers "a short and plain statement that any factual assertion in the movant's affidavits will be accepted by the district judge as being true unless the plaintiff submits his own affidavits or other documentary evidence contradicting the assertion." Counsel also appended to his motion the complete text of Rule 56 of the Federal Rules of Civil Procedure.

In support of its present motion, the defendant first recounts the factual basis for this action, noting, as suggested above, that the plaintiff's discharge on March 29, 1979, was prompted by a letter of February 19, 1979, from Dr. Henry M. Goldberg, imposing specific weight and other physical limitations upon the plaintiff in the course of his employment. By that letter, the substance of which was confirmed by the independent inquiry of the defendant's president, Lester G. Peterson, Dr. Goldberg recommended that the plaintiff not be required to lift over twenty-five pounds or to engage in any heavy pushing or pulling. Exhibit 11 to *Affidavit* of Lester G. Peterson at 2–3 (January 5, 1984).

The defendant further states, principally through the affidavit of its president, Lester G. Peterson, that company officials responsible for plant operations determined, based on the physical work limitations imposed by Dr. Goldberg, that the plaintiff was no longer capable of performing efficiently those duties required of him as a crane operator in any of the company's facilities. In short, it is the defendant's position that the plaintiff "was terminated because he could not perform his job duties without endangering his own safety, the safety of co-workers and the safety of company equipment." *Affidavit* of Lester G. Peterson at 4 (January 5, 1984).

In further factual support of its present motion, the defendant describes the procedural history of the plaintiff's discrimination claims through both state and federal administrative proceedings. The considerable record provided by the defendant in this context shows that the plaintiff first raised his allegations of race, age, and handicap discrimination on July 9, 1979, with the Equal Rights Division of the State of Wisconsin Department of Industry, Labor and Human Relations. On February 17, 1981, following its investigation of the plaintiff's contentions, the Equal Rights Division issued a determination of probable cause with respect to the charge of handicap discrimination but found no probable cause to support the claims of discrimination based on race and age. Exhibit 12A to *Affidavit* of Lester G. Peterson (January 5, 1984). Because the plaintiff apparently failed to seek review of the Equal Rights Division's unfavorable determinations with respect to his race and age claims, his complaint with respect to these allegations was deemed waived. Exhibits 12A & 13 to *Affidavit* of Lester G. Peterson (January 5, 1984).

However, following an unsuccessful attempt at conciliation on the probable cause finding with respect to handicap discrimination, a full evidentiary hearing was conducted on this discrete claim on November 9, 1982. Based on the evidence adduced at that hearing, the state examiner, on February 4, 1983, issued an order dismissing the complaint, premised on findings of fact and conclusions of law that the employer had undertaken no discriminatory action in violation of the Wisconsin Fair Employment Act, Wis.Stat. §§ 111.31 *et seq.* Exhibit 13 to *Affidavit* of Lester G. Peterson (January 5, 1984).

With the plaintiff's apparent failure to seek review of the dismissal of his handicap claim, all state administrative proceedings were concluded; accordingly, the Equal Employment Opportunity Commission undertook its own investigation of the discrimination charges. However, by its *Determination* of April 23, 1983, that commission failed to find reasonable cause to believe that the plaintiff's allegations are true. On that same day, the plaintiff was issued a standard "Notice of Right to Sue," upon which the present federal action is based. Exhibits 14 & 15 to *Affidavit* of Lester G. Peterson (January 5, 1984). As indicated above, the plaintiff has incorporated in his present suit all of the allegations of race, age, and handicap discrimination considered but rejected at the state administrative level.

It is the defendant's principal legal position that the allegations of age and race discrimination are wholly without merit. Directing the Court's attention to the particular findings articulated by the Equal Rights Division of the State of Wisconsin Department of Industry, Labor and Human Relations in support of its finding of no probable cause on the race and age discrimination charges, the defendant argues that it is entitled to judgment as a matter of law. In further support of this conclusion, the movant observes that the findings of the state hearing examiner with respect to the charge of handicap discrimination are wholly consistent with the position adopted by the defendant's president, Lester G. Peterson—namely, that none of the defendant's employees, regardless of race or age, would be retained as a crane operator with the physical limitations of the present plaintiff. Noting that a state judicial determination, had the plaintiff pursued his right to review under the Wisconsin Fair Employment Act, Wis.Stat. §§ 111.31 *et*

*seq.*, would have been *res judicata* with respect to all present claims, the defendant nonetheless maintains on the merits that it is entitled to summary judgment, as follows:

> The hard truth, which plaintiff is most reluctant to accept, is that he lost his job solely and exclusively because he was physically unable to do it. Although this action is not barred under *Kremer [v. Chemical Construction Corporation,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982), *rehearing denied,* 458 U.S. 1133, 103 S.Ct. 20, 73 L.Ed.2d 1405 (1982)] because plaintiff did not seek a court review of the administrative proceedings, it is manifest from the moving papers that the identical claims which he brings to this court have been thoroughly investigated by both the state and federal agencies charged with enforcing employment discrimination laws, and that those claims have been resoundingly rejected.

Defendant's *Brief in Support of Motion for Summary Judgment* at 8–9 (January 6, 1984).

Observing, parenthetically, that Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* incorporates no equivalent of the state law prohibition against handicap discrimination in employment, the defendant maintains that this plaintiff's "exclusively state claim has been litigated fully and has been resolved adverse to [him]." Defendant's *Brief in Support of Motion for Summary Judgment* at 5–6 (January 6, 1984). Accordingly, the movant requests that this portion of the plaintiff's cause of action likewise be dismissed for lack of subject matter jurisdiction.

As indicated above, the plaintiff was provided with explicit notice of his opportunity—even obligation—to file and serve a brief in response to the defendant's present Rule 56(b) motion; in both the Court's summary letter of December 5, 1983, and the defendant's own motion papers of January 6, 1984, this party was specifically advised of the filing requirement imposed upon him by Local Rule 6.01 and Rule 56(e) of the Federal Rules of Civil Procedure. To date, the plaintiff has filed no memorandum of law in response to the defendant's summary judgment petition. Accordingly, the Court today resolves that motion based solely on the record compiled to date, including the defendant's motion papers and supporting documents, and its own understanding and interpretation of the relevant law.

## RULE 56 AND THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The Court of Appeals for the Seventh Circuit has recently articulated again those well-established standards to be applied by the trial court in resolving a motion for summary judgment like the present, as follows:

> It is well accepted that the purpose of summary judgment is to prevent an unnecessary trial where, on the basis of the pleadings and supporting documents, there remains no material issue of fact to be tried. *Kirk v. Home Indemnity Company,* 431 F.2d 554, 559 (7th Cir. 1970). Summary judgment is appropriate only if it appears that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fitzsimmons v. Best,* 528 F.2d 692, 694 (7th Cir.1976); Fed.R.Civ.P. 56(c). The burden is upon the moving party to show that there is no issue of material fact in dispute, *Rose v. Bridgeport Brass Company,* 487 F.2d 804, 808 (7th Cir.1973), and all doubts as to the existence of an issue of material fact must be resolved against movant. *Moutoux v. Gulling Auto Electric, Inc.,* 295 F.2d 573, 577 (7th Cir.1961).

*Moore v. The Marketplace Restaurant, Inc.,* 754 F.2d 1336, 1339 (7th Cir.1985) (citing *Dreher v. Sielaff,* 636 F.2d 1141, 1143 n. 4 (7th Cir.1980); *see also Brown University v. Kirsch,* 757 F.2d 124, 129 (7th Cir.1985) (noting that "summary judgment is to be cautiously invoked to the end that parties may always be afforded a trial

where there is a bona fide dispute of facts between them").

Under the present circumstances, where the factual averments in the defendant's president's affidavit remain wholly uncontroverted and the propriety of the movant's legal conclusions go wholly unchallenged, the Court finds applicable the observations made by the United States District Court for the Southern District of New York in *Mignone v. Vincent*, 411 F.Supp. 1386, 1388 (S.D.N.Y.1976), as follows:

> The plaintiff has made no response to the defendants' motion and the factual data submitted thereon, despite the special effort made by the defendants' counsel, at the Court's direction, to notify the plaintiff that he had the opportunity to respond. Thus, although the pleadings of a *pro se* complainant are entitled to a liberal construction, *see Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Frankos v. LaVallee*, 535 F.2d 1346 (2d Cir.1976), the absence of any response by the plaintiff at all to the factual showing adverse to the plaintiff's pleading, renders summary judgment appropriate on these claims. *Cf. Williams v. Halperin*, 360 F.Supp. 554, 556 (S.D.N.Y.1973) (liberality afforded *pro se* complaint "is not without limits").

*See also In re Wright*, 19 B.R. 271, 274 (Bkrtcy.D.Mass.1982) ("... Rule 56(e) makes clear ... that a party cannot rest on the allegations in his complaint ... in opposition to a properly supported summary judgment motion made against him").

■ To be sure, the mere failure of the plaintiff to interpose any response does not entitle the movant to judgment as a matter of law. However, it is uncontroverted that the decision to terminate the plaintiff was precipitated by Dr. Goldberg's letter of February 19, 1979, recommending against any heavy lifting or strong exertional activity. *Affidavit* of Lester G. Peterson at 2–3 (January 5, 1984). Indeed, the plaintiff himself acknowledges in his *pro se* complaint that his physician's recommendation lies at the very heart of this litigation. Mr.

Peterson further sets forth in his affidavit the numerous work situations in which an individual like the plaintiff, employed as a crane operator, would be required to engage in lifting, pushing, and pulling—all exceeding those restrictions imposed by Dr. Goldberg. *Affidavit* of Lester G. Peterson at 3 (January 5, 1984). In short, there is nothing in the record to support the contention that the defendant's decision to discharge the plaintiff was based on anything other than the conclusion of company officials that this employee's physical limitations would prevent him from efficiently and reasonably performing those duties assigned to him as a crane operator.

The propriety of the Court's companion conclusions that there are no material issues of fact for trial and that the defendant is, indeed, entitled to judgment as a matter of law are further underscored by the considerable burden of proof placed upon a plaintiff, like the present, attempting to establish his status as a victim of employment discrimination. In *Coates v. Johnson & Johnson*, 756 F.2d 524, 531 (7th Cir. 1985), the Court of Appeals for the Seventh Circuit described the heavy burden of Title VII plaintiffs this way:

> In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 [93 S.Ct. 1817, 36 L.Ed.2d 668] (1973), the Supreme Court provided an analytical framework "intended progressively to sharpen the inquiry into the elusive factual question of intentional discrimination" in private, nonclass Title VII cases. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 255 n. 8 [101 S.Ct. 1089, 1094 n. 8, 67 L.Ed.2d 207] (1981). Under this *McDonnell Douglas-Burdine* framework, the plaintiff is required to establish a prima facie case by producing facts that "eliminate[ ] the most common nondiscriminatory reasons" for the defendant's alleged action, for example, by showing that he or she is a member of a protected group and is otherwise basically similarly situated to members of the unprotected group. *Burdine*, 450 U.S. at 254 [101 S.Ct. at 1094]. It then becomes a reasonable assumption that any

differential treatment by the employer was due to discrimination. The facts the plaintiff must show to be entitled to the inference of discrimination will vary according to the type of employment practice involved. *McDonnell Douglas*, 411 U.S. at 802 n. 13 [93 S.Ct. at 1824 n. 13]; *Burdine*, 450 U.S. at 253 n. 6 [101 S.Ct. at 1093 n. 6]. A plaintiff's prima facie case creates a rebuttable presumption that the defendant unlawfully discriminated against the plaintiff and compels the trier of fact to award judgment for the plaintiff unless the defendant offers evidence that "raises a genuine issue of fact as to whether [the defendant] discriminated against the plaintiff." *Burdine*, 450 U.S. at 254–55 [101 S.Ct. at 1094].

The defendant's burden may be met by "articulat[ing] some legitimate, nondiscriminatory reason" for the defendant's employment action. *McDonnell Douglas*, 411 U.S. at 802 [93 S.Ct. at 1824]; *see Burdine*, 450 U.S. at 254 [101 S.Ct. at 1094]. The purpose of this evidence is to "allow the trier of fact rationally to conclude that the employment decision [was not] motivated by discriminatory animus." *Burdine*, 450 U.S. at 257 [101 S.Ct. at 1096]. If the explanation provided by the defendant is "legally sufficient to justify a judgment for the defendant," then "the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity." *Id.* at 255 [101 S.Ct. at 1094] (footnote omitted). This new level allows the plaintiff to try to persuade the court that the defendant's explanation is "unworthy of credence" or that "a discriminatory reason more likely motivated" the defendant. *Id.* at 256 [101 S.Ct. at 1095]. The plaintiff retains the ultimate burden of persuasion. *Id.*

Similarly, in what is perhaps its most recent review of claims brought under the Federal Age Discrimination in Employment Act, 29 U.S.C. § 623 *et seq.*, the Seventh Circuit restated those well-established burdens of proof imposed upon prosecuting and defending parties as follows:

The seminal case of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 804 [93 S.Ct. 1817, 1824, 1825, 36 L.Ed.2d 668] (1973), laid down the guidelines regarding the proof of an age discrimination case. First, plaintiff must establish a prima facie case; defendant then may "articulate" a defense of legitimate business justification; and plaintiff may then show that the alleged justification is a mere pretext.

The requirements for making out a prima facie case are that plaintiff establish: (1) that he falls within the protected age group; (2) that he was discharged; (3) that there was an available job open; (4) that plaintiff applied for the job; (5) that plaintiff was qualified to perform the job; but that (6) the employer filled the job by selecting a younger person outside the protected age group. The crucial issue in the case at bar is whether there was a genuine question of fact ... sufficient to preclude summary judgment for the defendant.

*Trembath v. St. Regis Paper Company*, 753 F.2d 603, 604 (7th Cir.1985).

Not only has the plaintiff, by his failure to oppose the present motion, failed to establish those facts that might support a prima facie case of race or age discrimination, he has also been unsuccessful in demonstrating any present ability to discredit the defendant's claim to legitimate, nondiscriminatory reasons for his discharge. In fact, all indications in the record support the conclusion that the plaintiff's charges of employment discrimination are wholly unfounded. In its probable cause memorandum of February 17, 1981, the Equal Rights Division discredited both the age and race discrimination charges, as follows:

The Complainant was the Respondent's sole black employee for the six (6) or seven (7) years prior to his termination. The Respondent has no other employees who have medical limitations on their ability to work, and there is no record of any other employee discharged for reasons similar to those for which the Complainant was discharged. In view of the

fact that no Caucasian employee with a similar medical condition or restriction has been retained by the Respondent, it cannot be shown that the Complainant received differential treatment and was discharged because of his race.

The Complainant's age cannot be shown to be a factor in the Respondent's decision to terminate him. In September of 1980, fifteen (15) of the Respondent's fifty-eight (58) employees were in the protected age group (40 to 65 years of age). A review of the ages of twenty-four (24) employees discharged between 1977 and 1979 does not show a pattern of discharging individuals in the protected age group at a greater rate than younger employees. In addition, the Respondent replaced the Complainant by reassigning present crane operators. Mr. Peterson indicates either R. Schmidt, or A. Garcia probably filled the Complainant's position. Mr. Garcia is over forty (40) years of age.

Exhibit 12A at 7 to *Affidavit* of Lester G. Peterson (January 5, 1984). As indicated above, the findings of the state hearing examiner likewise suggest that the plaintiff's complaints of handicap discrimination are something less than meritorious. *See* Exhibit 13 to *Affidavit* of Lester G. Peterson (January 5, 1984). By these additional observations, the Court does not mean to impose upon the plaintiff any present obligation to argue his entire case, including the establishment of prima facie and rebuttal evidence, within the framework of a request for summary judgment. At the same time, the Court does note that the principal disparate treatment claims articulated in the complaint are wholly refuted by the record offered by the defendant in support of its present motion.

■ Finally, with respect to the discrete allegation that the plaintiff was unlawfully discharged on the basis of his handicap, the Court concurs in the defendant's position that it now lacks subject matter jurisdiction to hear a cause of action brought under the Wisconsin Fair Employment Act, Wis.Stat. § 111.31 *et seq.* Regardless of the manner and extent to which this claim was fully disposed of by the state proceedings, the Court must decline to exercise pendent jurisdiction over it since the previously attendant federal charges are no longer a part of this case. Parenthetically, the Court notes that even if it were inclined to exercise jurisdiction over the handicap claim, it would feel obliged to dismiss that cause of action on its merits since, as indicated above, the plaintiff has failed to adduce any facts and argue any law controverting the unequivocal position adopted and argued by the defendant in its present motion. Under these circumstances, the Court finds that the plaintiff's charge of employment discrimination based on handicap must likewise be dismissed.

## CONCLUSION

For the reasons set forth above, the Court hereby GRANTS the defendant's motion for summary judgment as to the entire cause of action in the plaintiff's complaint, pursuant to Rule 56(b) of the Federal Rules of Civil Procedure.